PAULA R. BROWN (SB# 254142)
pbrown@singletonschreiber.com
**SINGLETON SCHREIBER, LLP**
591 Camino de la Reina, Ste. 1025
San Diego, CA 92108
Telephone: (619) 342-4045
Facsimile: (619) 255-1515

CHRISTOPHER R. RODRIGUEZ (SB# 212274)
*crodriguez@singletonschreiber.com*
ANDREW D. BLUTH (SB# 232387)
*abluth@singletonschreiber.com*
**SINGLETON SCHREIBER, LLP**
1414 K Street, Suite 300
Sacramento, California 95814
Telephone: (916) 248-8478
Facsimile: (619) 255-1515

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| HELEN LEDEZMA, CLIFFORD LEONE, DANIEL TOYE, JEFFREY WEISBROT, individually and on behalf of all other similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>HYUNDAI MOTOR AMERICA, a California corporation and HYUNDAI MOTOR COMPANY, a South Korean Corporation,<br><br>Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Helen Ledezma, Clifford Leone, Daniel Toye, and Jeffrey Weisbrot, individually and on behalf of other members of the below-defined classes, bring this action against Defendants Hyundai Motor America and Hyundai Motor Company (together, "Defendants" or "Hyundai"), by and through their attorneys, and allege upon personal knowledge as to themselves and their own acts, and as to all other matters upon information and belief, based upon the investigation of the undersigned attorneys, as follows:

## INTRODUCTION

1. This is a class action lawsuit brought on behalf of current and former owners and lessees of Hyundai vehicles outfitted with a Direct Driver Monitoring System ("DDMS"), including 2024-2026 Hyundai Santa Fe vehicles, 2025-2026 Hyundai Ioniq 5 vehicles, 2025-2026 Hyundai Tucson vehicles, 2025-2026 Hyundai Santa Cruz vehicles, and 2026 Hyundai Palisade vehicles (the "Class Vehicles").

2. Each of the Class Vehicles is equipped with a Forward Attention Warning ("FAW") system, a safety feature, that is designed to alert the driver when the driver is exhibiting distracted driving. The FAW system monitors the driver's attention through the DDMS, which uses an in-cabin infrared camera that is mounted in the middle of the dashboard, facing the driver. When working properly, the in-cabin camera watches the driver's eyes, face, and head position in real time, checking to see if the driver looks away from the road for too long. If the DDMS determines that the driver is distracted, the vehicle sounds an audible alarm with rapid beeping and flashes a visual warning on the dashboard.

3. The FAW and DDMS also integrate with the Class Vehicles' cruise control. If the driver is using cruise control and the DDMS determines, through the in-cabin camera, that the driver is distracted, it will repeatedly sound the FAW alarm and dashboard warning. If the DDMS determines that the driver's attention is continuously distracted while using cruise control, the vehicle will disable cruise

control and implement Emergency Stop, implementing the brakes and bringing the vehicle to a full stop. Cruise control cannot be used without the FAW activated.

4. The FAW and DDMS are intended to make the Class Vehicles safer. However, the DDMS in-cabin camera in the Class Vehicles is defective. It routinely malfunctions, misreading the driver's eyes and head position, resulting in false, repeated and distracting warnings, sudden braking, and loss of use of cruise control and other features (the "Defect"). The false audible and visual warnings and sudden braking are so frequent and distracting that they make the vehicle unsafe and make focusing on the road more challenging, the exact opposite of what the FAW/DDMS is supposed to do.

5. The Defect occurs because the in-cabin infrared camera routinely detects "distracted" driving during normal and safe driving conditions when the driver is looking at the road and not distracted. For example, the DDMS reports distracted driving due to the driver wearing sunglasses, prescription eyeglasses, or a hat, making slight movements of the head, sitting lower or higher in the seat due to height, positioning their hands in varying places on the steering wheel, squinting their eyes, and even sun glare coming into the vehicle. The DDMS also triggers repeated and distracting warnings based on the infrared camera for no apparent reason, making it impossible to drive the Class Vehicles without warnings going off. Drivers report that these false warnings occur daily and up to every couple of minutes while driving.

6. Hyundai has been aware of the Defect but has offered no fix. In January 2025, Hyundai issued a Technical Service Bulletin ("TSB") to its authorized service centers acknowledging the problem with the DDMS infrared camera.[1] However, Hyundai's solution was that drivers need to wear different

---

[1] **Exhibit A** (Hyundai technical Service Bulletin 25-GI-001H (January 2025)).

sunglasses or glasses, adjust their seats, and "look at the road."[2]

7. The Defect can be summed up by the following complaint submitted to the National Highway Traffic Safety Administration ("NHTSA") by the owner of a 2026 Hyundai Santa Fe:

> This issue warrants immediate consideration for a recall. Despite wearing glasses, sunglasses, or no glasses, the problem persists. I occasional do remove my glasses while driving, and the warning continues to sound. This occurs regardless of the time of day, weather conditions, or whether I am sitting upright or reclining. The warning randomly activates and deactivates, sometimes without any intervention. Occasionally, I simply allow the warning to sound without taking any action, and it remains active for a few seconds or until it triggers a warning that the system will be turned off, at which point it deactivates. I have attempted various troubleshooting methods, such as keeping my eyes open, adjusting my seating position, wearing and removing my glasses, and tilting them to minimize glare. None of these methods have proven effective in preventing the warning from activating or in making it deactivate. This is a persistent problem. Hyundai dealerships initially informed me that the warning might be an annoyance and their response was to simply refrain from using it. However, if a basic feature like cruise control in a 2026 model is rendered unusable due to a design flaw (which this certainly is), it constitutes a clear violation of safety standards and should be addressed through a recall. The incessant alerts are highly disruptive and can be quite frustrating. For instance, driving with an arm in the 12 o'clock position triggers a warning, while wearing polarized sunglasses also results in an alert. The presence of a setting to disable the warning is a welcome feature but doesn't exist, and the system's persistent alerts can be overwhelming. The alerts continue even after taking a break. It is distracting and a safety hazard. Drivers should be able to adjust the sensitivity of the feature turn off this feature. Currently, there is no way to disable or temporarily disable this feature.[3]

---

[2] *Id.*

[3] *See* NHTSA ID 11737176. All consumer and NHTSA complaints quoted herein are reproduced verbatim, including original spelling, punctuation, and grammatical errors.

8. As a result of the Defect, the Class Vehicles are unsafe.

9. Despite extensive notice and knowledge of the Defect from the numerous consumer complaints it has received, information received from dealers, pre-sale testing, the numerous NHTSA complaints, and its own internal records, Hyundai has not recalled the Class Vehicles to repair the Defect, offered its customers a suitable repair or replacement free of charge, or offered to reimburse consumers who have incurred out-of-pocket expenses in an attempt to repair the Defect.

10. As a result of the Defect, Plaintiffs and other Class members have suffered injury in fact, incurred damages, and have otherwise been harmed by Hyundai's conduct because they paid for and received a Class Vehicle with an undisclosed and significant safety defect. Each of these purchasers and lessees were damaged in that they paid more for their Class Vehicles than they would have if they knew about the Defect, or in that they would not have purchased or leased their Class Vehicles at all had they been informed of the Defect.

11. On behalf of themselves and the proposed Classes, defined below, Plaintiffs bring this action to redress Hyundai's violation of multiple state consumer protection statutes, breach of express and implied warranties, and unjust enrichment. Plaintiffs seek damages, restitution, and equitable relief to compensate Plaintiffs and the Classes and to remedy the Defect.

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) and (d) because the aggregate amount in controversy for the Class exceeds $5,000,000 and at least one member of the Class is diverse in citizenship from one Defendant.

13. This Court has personal jurisdiction over Hyundai Motor America because it is a California corporation with its corporate headquarters located in this district.

14. This Court has personal jurisdiction over Hyundai Motor Company because Hyundai Motor Company has purposedly availed itself of the privilege of doing business within California, including by marketing and selling the Class Vehicles, and exercising jurisdiction over Hyundai Motor Company does not offend traditional notions of fair play and substantial justice.

15. Venue as to Hyundai is proper in this judicial district under 28 U.S.C. § 1391 because Defendant sells a substantial number of automobiles in this District, has dealerships in this District, maintains its corporate headquarters within this District, and many of Hyundai's acts complained of herein occurred within this District, including the marketing, sale and leasing of the Class Vehicles to Plaintiffs and members of the putative Classes.

## PARTIES

### *Plaintiffs*

**California**

16. Plaintiff **Helen Ledezma** is a citizen of California and resides in Whittier, California. In 2026, Plaintiff Ledezma leased a 2026 Ioniq 5 from Anaheim Hyundai in Anaheim, California. Plaintiff's Class Vehicle is equipped with a DDMS and infrared in-cabin camera.

17. Prior to purchasing her Class Vehicle, Plaintiff Ledezma reviewed Hyundai's promotional materials, test drove the vehicle and interacted with at least one sales representative. At no point during discussions with the authorized sales representative regarding the features, reliability, and safety of the Class Vehicle did Hyundai reveal the existence of the Defect. Nor did Plaintiff experience the Defect while test driving the vehicle. Hyundai also failed to disclose the Defect through its sales brochures when advertising the features, reliability, and safety of the Class Vehicle.

18. Through her exposure to Hyundai's advertisements, promotional materials and other public statements, Plaintiff was aware of and believed

Hyundai's marketing message that the Class Vehicles are safe, which was material to her decision to lease her Ioniq 5.

19. Plaintiff Ledezma's vehicle is not safe. Shortly after leasing the vehicle, the Defect began manifesting through constant false alerts and warnings to pay attention to the road. Plaintiff presented the vehicle to Puente Hills Hyundai concerning the Defect. To date, Hyundai has been either unable or unwilling to repair the Defect.

20. The Defect has created a dangerous condition in Plaintiff's Class Vehicle that gives rise to a clear, substantial, and unreasonable risk of death or personal injury to Plaintiff, other occupants of the vehicles, and others on the road.

21. Plaintiff has been left without a remedy and, as a result of Hyundai's conduct and the Defect, is continuously exposed to an increased risk of severe injury or death, and loss of use of important vehicle features, including cruise control.

22. Plaintiff did not receive the benefit of her bargain. She leased a vehicle of a lesser standard, grade, and quality than represented, and she did not receive a vehicle that met ordinary and reasonable consumer expectations regarding safe operation.

23. Had Hyundai disclosed the Defect, Plaintiff would not have leased her Class Vehicle or would have paid less to do so.

24. Plaintiff would purchase or lease a vehicle from Hyundai in the future if Hyundai's representations about the vehicle, including its safety, are accurate.

25. Plaintiff **Clifford Leone** is a citizen of California and resides in Banning, California. Plaintiff Leone and his wife own a 2025 Tucson Limited, which they purchased new in 2025 from Palm Springs Hyundai in Palm Springs, California. Plaintiff's Class Vehicle is equipped with a DDMS and infrared in-cabin camera.

26. Prior to purchasing his Class Vehicle, Plaintiff Leone reviewed

Hyundai's promotional materials, test drove the vehicle and interacted with at least one sales representative. At no point during discussions with the authorized sales representative regarding the features, reliability, and safety of the Class Vehicle did Hyundai reveal the existence of the Defect. Nor did Plaintiff experience the Defect while test driving the vehicle. Hyundai also failed to disclose the Defect through its sales brochures when advertising the features, reliability, and safety of the Class Vehicle.

27. Through his exposure to Hyundai's advertisements, promotional materials and other public statements, Plaintiff was aware of and believed Hyundai's marketing message that the Class Vehicles are safe, which was material to his decision to purchase his Tucson.

28. Plaintiff Leone's vehicle is not safe. Shortly after purchasing the vehicle, the Defect began manifesting through constant false alerts and warnings to pay attention to the road. Plaintiff and his wife, who also drives the Tucson, are very concerned about using cruise control, an important feature of the vehicle, because the constant false alerts shut down the cruise control completely. Plaintiff presented the vehicle to Palm Springs Hyundai concerning the Defect and was told that there was no fix. To date, Hyundai has been either unable or unwilling to repair the Defect.

29. The Defect has created a dangerous condition in Plaintiff's Class Vehicle that gives rise to a clear, substantial, and unreasonable risk of death or personal injury to Plaintiff, other occupants of the vehicles, and others on the road.

30. Plaintiff has been left without a remedy and, as a result of Hyundai's conduct and the Defect, is continuously exposed to an increased risk of severe injury or death, and loss of use of important vehicle features, including cruise control.

31. Plaintiff did not receive the benefit of his bargain. He purchased a vehicle of a lesser standard, grade, and quality than represented, and he did not

receive a vehicle that met ordinary and reasonable consumer expectations regarding safe operation.

32. Had Hyundai disclosed the Defect, Plaintiff would not have purchased his Class Vehicle or would have paid less to do so.

33. Plaintiff would purchase or lease a vehicle from Hyundai in the future if Hyundai's representations about the vehicle, including its safety, are accurate.

**Florida**

34. Plaintiff **Daniel Toye** is a citizen of Florida and resides in Fort Lauderdale, Florida. Plaintiff Toye leases a 2025 Ioniq 5, which he leased new in September 2025 from Coconut Creek Hyundai in Coconut Creek, Florida. Plaintiff Toye's Class Vehicle is equipped with a DDMS and infrared in-cabin camera.

35. Prior to purchasing his Class Vehicle, Plaintiff Toye reviewed Hyundai's promotional materials, test drove the vehicle and interacted with at least one sales representative. At no point during discussions with the authorized sales representative regarding the features, reliability, and safety of the Class Vehicle did Hyundai reveal the existence of the Defect. Nor did Plaintiff experience the Defect while test driving the vehicle. Hyundai also failed to disclose the Defect through its sales brochures when advertising the features, reliability, and safety of the Class Vehicle.

36. Through his exposure to Hyundai's advertisements, promotional materials and other public statements, Plaintiff was aware of and believed Hyundai's marketing message that the Class Vehicles are safe, which was material to his decision to lease the Ioniq 5. Plaintiff also has been a Hyundai car owner/lessee for several decades and reasonably believed, through his many years of driving Hyundais, that his Class Vehicle was safe.

37. Plaintiff Toye's vehicle is not safe. Shortly after leasing the vehicle, the Defect began manifesting through constant alerts and warnings to pay attention to the road. Plaintiff requires glasses to drive and while wearing his glasses, the

vehicle constantly issues false alerts for Plaintiff to look at the road. The only way Plaintiff could get the warnings to stop was to temporarily flip off his glasses. However, because Plaintiff requires glasses to drive, the warnings would immediately return when he put his glasses back on. Plaintiff is unable to use cruise control in his vehicle, an important feature, because of the constant false alerts. To date, Hyundai has been either unable or unwilling to repair the Defect.

38. The Defect has created a dangerous condition in Plaintiff's Class Vehicle that gives rise to a clear, substantial, and unreasonable risk of death or personal injury to Plaintiff, other occupants of the vehicles, and others on the road.

39. Plaintiff has been left without a remedy and, as a result of Hyundai's conduct and the Defect, is continuously exposed to an increased risk of severe injury or death, and loss of use of important vehicle features, including cruise control.

40. Plaintiff did not receive the benefit of his bargain. He leased a vehicle of a lesser standard, grade, and quality than represented, and he did not receive a vehicle that met ordinary and reasonable consumer expectations regarding safe operation.

41. Had Hyundai disclosed the Defect, Plaintiff would not have leased his Class Vehicle or would have paid less to do so.

42. Plaintiff would purchase or lease a vehicle from Hyundai in the future if Hyundai's representations about the vehicle, including its safety, are accurate.

**New York**

43. Plaintiff **Jeffrey Weisbrot** is a citizen of New York and resides in New Hyde Park, New York. In July 2026, Plaintiff Weisbrot leased a 2026 Palisade Calligraphy new from Millenium Hyundai in Hempstead, New York. Plaintiff's Class Vehicle is equipped with a DDMS and infrared in-cabin camera.

44. Prior to purchasing his Class Vehicle, Plaintiff Weisbrot reviewed Hyundai's promotional materials, test drove the vehicle and interacted with at least

one sales representative. At no point during discussions with the authorized sales representative regarding the features, reliability, and safety of the Class Vehicle did Hyundai reveal the existence of the Defect. Nor did Plaintiff experience the Defect while test driving the vehicle. Hyundai also failed to disclose the Defect through its sales brochures when advertising the features, reliability, and safety of the Class Vehicle.

45. Through his exposure to Hyundai's advertisements, promotional materials and other public statements, Plaintiff was aware of and believed Hyundai's marketing message that the Class Vehicles are safe, which was material to his decision to lease his Palisade. Additionally, Plaintiff had previously purchased a 2021 and a 2022 Hyundai Palisade Limited, which did not have the Defect. Based on his prior experience with Hyundai vehicles, Plaintiff reasonably believed that Hyundai vehicles were safe.

46. Plaintiff Weisbrot's Palisade Calligraphy is not safe. Shortly after leasing the vehicle, the Defect began manifesting through constant false alerts and warnings to keep eyes on the road and hands on the wheel, when both conditions are met. This occurs while Plaintiff is driving with and without cruise control. To date, Hyundai has been either unable or unwilling to repair the Defect.

47. The Defect has created a dangerous condition in Plaintiff's Class Vehicle that gives rise to a clear, substantial, and unreasonable risk of death or personal injury to Plaintiff, other occupants of the vehicles, and others on the road.

48. Plaintiff has been left without a remedy and, as a result of Hyundai's conduct and the Defect, is continuously exposed to an increased risk of severe injury or death, and loss of use of important vehicle features, including cruise control.

49. Plaintiff did not receive the benefit of his bargain. He leased a vehicle of a lesser standard, grade, and quality than represented, and he did not receive a vehicle that met ordinary and reasonable consumer expectations regarding safe

operation.

50. Had Hyundai disclosed the Defect, Plaintiff would not have leased his Class Vehicle or would have paid less to do so.

51. Plaintiff would lease or purchase a vehicle from Hyundai in the future if Hyundai's representations about the vehicle, including its safety, are accurate.

***Defendants***

52. Defendant Hyundai Motor Company is a South Korean corporation, with its principal place of business in Seoul, South Korea. Hyundai Motor Company is the parent company of Defendant Hyundai Motor America. Hyundai Motor Company through its various entities (including Hyundai Motor America), designs, manufactures, markets, distributes, and sells Hyundai vehicles, including the Class Vehicles, across the United States.

53. Defendant Hyundai Motor America is a California corporation with its principal place of business in Fountain Valley, California. Hyundai is the sales, marketing, distribution, and servicing arm for Hyundai Motor Company in the United States and is wholly owned by Hyundai Motor Company.

54. At all relevant times, Hyundai Motor America acted as an authorized agent, representative, servant, employee, and/or alter ego of Hyundai Motor Company while performing activities, including but not limited to advertising, marketing, warranties, selling Class Vehicles, disseminating technical information, and monitoring Hyundai vehicles in the United States.

55. Hyundai Motor America renders services on behalf of Hyundai Motor Company that are sufficiently important to Hyundai Motor Company and its sale of vehicles in the United States that Hyundai Motor Company would perform those services itself if Hyundai Motor America did not exist.

56. Hyundai Motor Company controls the public name and brand of Hyundai Motor America, and in consumer transactions, like those with Plaintiffs and the proposed Classes, Hyundai Motor Company's unified brand and logo serve

as its and Hyundai Motor America's official seal and signature as to consumers.

57. Hyundai Motor Company operates Hyundai Motor America with a unity of interest and owners such that Hyundai Motor America is a mere instrumentality of its parent.

58. Upon information and belief, Hyundai Motor Company has, and at all relevant times had, the contractual right to exercise and in practice has exercised control over Hyundai Motor America's work, including but not limited to the manner of Class Vehicles' marketing, the scope of written warranties, and representations made, and facts withheld from consumers and the public about the Defect.

59. At all relevant times to this action, Hyundai Motor Company and Hyundai Motor America manufactured, distributed, sold, leased, and/or warranted the Class Vehicles under the Hyundai brand name throughout the United States. Defendants and/or its agents designed, manufactured, and/or installed the defective components and/or software in the Class Vehicles. Additionally, Hyundai developed and disseminated the owner's manuals, warranty booklets, advertisements, maintenance schedule, and other promotional and technical matter relating to the Class Vehicles.

## FACTUAL ALLEGATIONS

### A. The Defective Direct Driver Monitoring System

60. The Class Vehicles are all equipped with several driver assistance systems intended to make the vehicle safer. In general, driver assistance systems utilize an electronic network of sensors, cameras, and computers within the vehicle designed to increase the driver's awareness to avoid crashes.

61. One of the driver assistance systems in the Class Vehicles is the Forward Attention Warning ("FAW") system.

62. The FAW relies on the vehicle's Direct Driver Monitoring System ("DDMS"). The FAW and DDMS in all Class Vehicles are the same or materially

similar.

63. The DDMS is a system that monitors driver behavior. It is referred to as a "direct" monitoring system because it relies on direct movements of the driver monitored through an infrared in-cabin camera.

64. The in-cabin camera in the Class Vehicles is mounted on top of the steering wheel column, facing the driver. The following picture from the Owner's Manual for the 2025 Hyundai Santa Fe depicts the positioning of the infrared camera:

**In-cabin camera**




65. The DDMS in-cabin infrared camera in all Class Vehicles is materially the same and is similarly positioned.

66. When working properly, the infrared camera in each Class Vehicle watches the driver and feeds information about the driver to various systems in the vehicle, including the vehicle's FAW system.

67. According to Hyundai, the FAW system utilizes the in-cabin camera and "determines whether the driver is focused on the road depending on information, such as the amount of time the driver is looking away from the road, the amount of time the [driver's] eyes are closed, how frequently the driver yawns, etc."[4]

[4] *See*, *e.g.*, Owner's Manual for 2025 Hyundai Santa Fe at p. 7-67.

68. According to Hyundai, "[i]f Forward Attention Warning judges the driver is not focused, the '**Keep eyes on the road and drive carefully**' warning message will appear on the cluster, and an audible warning will sound."[5] These audible and visual warnings will repeat if the FAW determines the driver is still distracted.

69. The following is a depiction of the visual warning that displays on the vehicle cluster screen while audible alarms sound:

**Forward Attention Warning**




70. The DDMS and FAW also integrate with the Class Vehicles' cruise control system. If the cruise control system is being used in a Class Vehicle, the FAW and DDMS automatically engage to detect the driver's level of attention.

71. If the FAW detects that the driver is distracted while operating cruise control, the FAW will initially sound the typical audible and visual FAW alarms. If the FAW determines that despite the alarms the driver remains distracted while using the cruise control, the vehicle will engage its Emergency Stop system, which takes control of the vehicle's steering wheel, engages the brakes, and brings the vehicle to a complete and sudden stop.

72. As Hyundai explains, the Emergency Stop function will engage if the

[5] *Id.*

vehicle determines "[y]our eyes are not focused on the road after inattentive driving warning is continuously displayed."[6]

73. Although Hyundai's FAW and DDMS are intended to be safety features in the Class Vehicles, they malfunction, resulting in constant false audible and visual alarms that are distracting and make the Class Vehicles less safe.

74. The DDMS infrared camera in the Class Vehicles routinely misreads normal and safe driving conditions and driver behavior as distracted driving, sounding alarms and warnings while the vehicle is in operation. These warnings and alarms take the driver's attention away from the road and are themselves distracting (the "Defect").

75. Additionally, because drivers frequently do not know what is triggering the false warnings and alarms, they are unable to prevent them from occurring.

76. Hyundai admits in the owner's manual (which the Class members do not see prior to purchase/lease) that the DDMS and FAW are defective and do not function properly under a slew of normal and routine driving conditions.

77. Hyundai states: "Forward Attention Warning may not operate properly, or it may operate unexpectedly under the following circumstances:

- The driver is wearing sunglasses, special glasses, infrared cutoff glasses, refracting glasses or thick glasses.
- The driver has heavy eye makeup (eyeliner, mascara, color makeup, false eyelash) or eye piercing.
- The driver's view is blocked by his/her hair, hat, etc.
- The driver is winking or wearing an eye patch on one eye.
- The driver's face is covered partially by a mask, muffler, etc.
- The driver's view of blocked by incoming light from outside of the

6 *Id.* at p. 7-88.

vehicle.

- Light from outside, sunlight or infrared LED light of the camera is reflected by glasses or sunglasses.
- The driver turns or lowers his/her head so that the fact or an eye is hidden from the camera.
- The driver shakes his/her head up and down, or adverse road conditions cause excessive vehicle vibrations while driving.
- The driver is improperly positioned in the driver's seat so that the driver's face is not detected.
- The driver is too tall or short.
- The camera is blocked by the driver's grip on the steering wheel.
- More than two people are looking at the instrument cluster simultaneously from the driver's seat.
- The driver's eyes are narrowed due to laughing or sun glare.
- Misrecognize a picture or mannequin that has a similar size of the driver's face.
- There are other devices using infrared light in the vehicle."[7]

78. In addition to the long list of normal and safe conditions that Hyundai admits can cause the DDMS to operate improperly, drivers also report that the defective DDMS and FAW activate for seemingly no reason at all. Drivers are unable to determine what is making the DDMS detect distracted driving and therefore, are unable to stop the alarms and warnings while operating the vehicle.

79. When the Defect manifests, repeated and constant alarms go off while the driver is trying to operate the vehicle. Drivers report that these alarms and warnings can occur up to every couple of minutes while driving. This draws the driver's attention away from the roadway, creating distractions and unsafe

---

7 *Id.* at p. 7-70.

conditions.

80. If the driver is using cruise control, the safety implications are even more severe. When the DDMS falsely detects distracted driving that the driver is unable to remedy while using cruise control, the FAW warnings lead to activation of the vehicle's Emergency Stop system, bringing the vehicle to a sudden and complete stop in the middle of busy roadways.

81. The Defect puts the driver, other occupants of the Class Vehicles, and other people on the road at risk of serious injury or death.

**B. Hyundai's Knowledge of the Defect**

82. Hyundai concealed from Plaintiffs and Class Members the Defect in the Class Vehicles, even though Hyundai knew or should have known of the Defect.

83. Hyundai became aware of the Defect through sources not available to Plaintiffs and the other members of the Class, including, but not limited to: pre-production testing, consumer complaints made exclusively to Hyundai's network of dealers and directly to Hyundai, aggregate warranty data compiled from Hyundai's network of dealers, testing conducted by Hyundai in response to consumer complaints, and its investigation and field analysis of the Defect.

**1. Pre-Release Testing**

84. Hyundai knew or should have known about the Defect from testing performed on the Class Vehicles. Prior to the sale of any of the Class Vehicles, Hyundai–like any other reasonable manufacturer of vehicles sold in the U.S. market–completed a multitude of analyses and testing that exposed the existence of the Defect.

85. Hyundai and its suppliers perform various pre-production testing on new vehicle components.

86. Hyundai and its suppliers performed these tests, and others, on the Class Vehicles and, if performed with due care, each of these tests demonstrated

that the relevant systems or components in the Class Vehicles would malfunction.

87. Hyundai and its suppliers evaluate the ways in which a specific component in the Class Vehicles will fail. When testing the systems at issue here, Hyundai assessed, among other aspects, the circumstances and methods by which the DDMS and its components, including the infrared camera, could fail, the likelihood of failure in various situations, and how probable each scenario is during normal, everyday driving.

88. Hyundai and its suppliers also performed computer and real-world simulations of the systems, including in extreme conditions, to confirm they are meeting the design goals. Hyundai tested the DDMS in actual vehicles, assessing the DDMS in a full range of conditions and extremities that are encountered once a Class Vehicle is sold to the public.

89. The DDMS in the Class Vehicles was exposed repeatedly to conditions that cause the Defect to manifest under everyday driving conditions. However, due to the costs of redesigning and fixing the DDMS, Hyundai opted to conceal the Defect and continue to sell the Class Vehicles with the Defect.

**2. Hyundai's January 2025 Technical Safety Bulletin**

90. In January 2025, Hyundai issued TSB 25-GI-001H for all Hyundai models outfitted with DDMS, admitting there was a problem but providing no real solution.[8] This TSB was issued exclusively to Hyundai's service centers and not the general public.

91. Despite admitting in its owner's manual to a litany of normal and safe driving conditions and behavior that the DDMS misreads as distracted driving, Hyundai's TSB provided a more limited list but still admitted that the system is flawed: "If the driver is wearing eyeglasses with low infrared transmittance, occupant is in an unusual seating position, or if the sun reflectivity angle is not

---

[8] **Exhibit A**.

ideal, the system may have difficulty detecting the driver's eyes. This may result in temporary deactivation of certain driver-assistance features such as Highway Driving Assist (HAD) and Forward Attention Warning (FAW)."[9]

92. Hyundai also admitted that "[t]he infrared in-cabin camera (ICC) **CANNOT** be disabled when cruise control is **ON**."[10] Thus, Hyundai admits that there is no way to use the cruise control with a malfunctioning DDMS that can lead to activation of the Emergency Stop function and the vehicle coming to a full and sudden stop on the roadway.

93. The solution Hyundai offered to its service centers was to recommend to drivers that they "remove suspected eyewear, select eyewear with higher infrared transmittance, adjust the seat position, or look at the road and avoid the infrared in-cabin camera (ICC)."[11]

94. However, as demonstrated by the numerous complaints below, the Defect persists, even when drivers adjust their glasses or seat positioning. Additionally, as Hyundai has admitted in the vehicle owner's manual, a litany of other normal behaviors can cause the DDMS to engage, causing a safety hazard for Class members. Hyundai has failed to provide any remedy that works for the Class Vehicles and has not recalled the Class Vehicles due to the Defect.

### 3. Consumer Complaints Concerning the Class Vehicles

95. Federal law requires Hyundai to monitor defects that can cause a safety issue and report them within five days to NHTSA. Therefore, Hyundai regularly monitors NHTSA complaints to meet reporting requirements under federal law. Hyundai, therefore, has knowledge of the Defect due to the numerous consumer complaints, such as those made to NHTSA, as well as by other means.

---

9 *Id.*

10 *Id.* (emphasis in original).

11 *Id.*

96. Consumers who purchased or leased Class Vehicles routinely complained to NHTSA about the Defect, detailing the repeated and distracting false warnings, sudden breaking, and unsafe driving conditions.

97. The following complaints made to NHTSA reflect examples of the complaints available to Hyundai concerning the Class Vehicles:

> October 15, 2024 Complaint re: 2024 Santa Fe: This vehicle has a Driver Attention Alert System which track driver's eye and head movement to determine driver attention levels. This system can be disabled outside of using Cruise Control through the setup menu. However, when in Cruise Control, this system CANNOT be disabled. Unfortunately, if you're wearing sun glasses the system declares the driver is inattentive and produces a distracting aural and visual warning. If no action is taken the vehicle will automatically come to a stop, even on the freeway! This option is a driver distraction and does not allow the driver to wear sunglasses increasing the risk of motor vehicle accidents. Several customer have complained to Hyundai about this system. there needs to be driver-selectable option to enable/disable, even in Cruise Control mode. (NHTSA ID: 11619875)
>
> November 14, 2024 Complaint re: 2025 Santa Cruz: While driving at highway speeds with Smart Cruise Control set during the day I put on sunglasses and the driver attention system turned off the system 6 seconds later. I repeated this event set several times at various speeds and driving conditions with the same 6 second failure result. I made the dealership aware of this and verified it with them in the vehicle. Apparently, system uses an IR camera to determine driver attention level via eye contact and does not work with most sunglasses. This seems to be a safety issue the dealership (or the manufacturer) should be the making the general public aware of. (NHTSA ID: 11625321)
>
> November 16, 2024 Complaint re: 2024 Santa Fe: THE CRUISE CONTROL USES A CAMERA , THE IS SUPPOSED TO WATCH YOUR EYES , TO MAKE SURE YOU ARE WATCHING THE ROAD . UNFORTUNATELY , IF YOU ARE WEARING GLASSES ( WHICH I MUST WHEN I AM DRIVING ) THE LIGHT REFLECTING OFF THEM MAKES THE UNIT THINK I AM NOT WATCHING THE ROAD . FOR BACKROUND, I WAS A HIGHWAY PATROL OFFIGER FOR 30 YEARS . I AM VERY ATTENTIVE TO THE ROAD AHEAD OF ME . IT SEEMS

HYUNDAI KNOWS OF THIS PROBLEM , WHICH SUDDENLY DISENGAGES THE CRUISE CONTROL , CAUSING RAPID DECELERATION OF THE VEHICLE . AT HIGHWAY SPEED , THIS IS VERY DANGEROUS . IT HAS BEEN NOTED ON MANY FORUMS , AND MY DEALER KNOWS ABOUT THE PROBLEM , BUT THERE IS NO WAY TO DISCONNECT THE CAMERA FROM THE SYSTEM . THIS IS REALLY AN ACCIDENT WAITING TO HAPPEN . (NHTSA ID: 11625702)

December 6, 2024 Complaint re: 2025 Tucson: I could not find an exact category check above, but this does sort of relate to cruise control. The Driver Attention Warning cannot be disabled even though there is an option to disable it. Turning it off has no affect. This is a warning that basically tells you to keep your eyes on the road. Sunglasses and regular eyeglasses can often cause it to create a warning. The system will then turn off cruise control if it's being used. According to several owners, this is common on newer model Hyundais and Hyundai either chooses not to or simply cannot fix this. My wife has notified Hyundai and is awaiting a response. (NHTSA ID: 11629341)

December 24, 2024 Complaint re: 2025 Santa Fe: Hyundai Distracted Driver feature is FAULTY and VERY hazardous! If someone puts on sunglasses to drive SAFELY, the vehicle says you ARE distracted; and cuts the cruise control and starts braking on its own. VERY BAD!!! The vehicle is almost undrivable. Many others are having their dealerships buy their Hyundai Santa Fes back because they are nearly undrivable and are a general US roadway hazard, due to the way the faulty "Distracted Driver" feature kills cruise control AND actually distracts drivers constantly ... causing very unsafe driving conditions. Might have to get our dealership to buy back our brand new 2025 Santa Fe Limited (as MANY others have already done). The Distracted Driver feature actually distracts drivers constantly AND causes unsafe and hazardous driving conditions. Please ... please ... please strongly compel Hyundai to fix this A.S.A.P., by Hyundai issuing a patch to their system update that allows drivers to turn off/disable the hazardous "Distracted Driver" feature. Hyundai Community Posts: [XXX] INFORMATION REDACTED PURSUANT TO THE FREEDOM OF INFORMATION ACT (FOIA), 5 U.S.C. 552(B)(6) (NHTSA ID: 11632295)

December 26, 2024 Complaint re: 2025 Santa Cruz: The Hyundai Santa Cruz has a Driver Forward Attention Warning system. The steering column has a camera that monitors the driver's eyes and face to make sure the driver is watching the road while the cruise control is engaged. The feature shuts down the cruise control if it assesses the driver is not paying attention to the road. The feature does not account for the driver wearing sunglasses, however. It still shuts down the cruise system even if the driver is paying attention while wearing sunglasses. The feature can be disabled on the instrument panel, but it is never actually disabled; it still keeps shutting off the cruise control whether the function is enabled or disabled and is a safety hazard since the driver can't wear sunglasses and use cruise control simultaneously. (NHTSA ID: 11632452)

January 27, 2025 Complaint re: 2025 Santa Fe: The forward attention warning (FAW) on the 2025 Hyundai Santa Fe calligraphy can not be deactivated. Correction, it can be turned off for normal driving. For instance, driving around the city or not using smart cruise control. As soon as you turn on the smart cruise control it's reactivated and can't be turned off. The FAW does not work when using prescription sunglasses / non prescription sunglasses or if the sun is hitting the inside of the cabin a certain way. The FAW constantly flashes warnings and beeps at you even though you are looking forward and keeping your eyes on the road. If you look far down the road you shift your eyes up some, and the system beeps and flashes warnings to keep your eyes on the road. On a recent 230 miles trip I did not wear my prescription sunglasses / non prescription sunglasses and the FAW system went off at least 50 plus times and I had my eyes on the road at all times. Very distracting, I then had to take my eyes off the road to see why it was beeping and telling me to keep my eyes on the road. The FAW system actually makes for a stressful and distracting drive. At this time the FAW is useless. I took the vehicle to the dealer and the FAW is not a system that can be turned off. Hyundai needs to allow the dealers to be able and deactivate the system. (NHTSA ID: 11638730)

January 28, 2025 Complaint re: 2024 Santa Fe: The driver assist warning/dinging coffee cup is a distraction while driving. It can ding up to every 4 minutes. This is a feature that should be able to be turned off. (NHTSA ID: 11639078)

February 7, 2025 Complaint re: 2024 Santa Fe: This is for the Forward Attention Warning…..this feature is misleading. I can be looking straight at the road and it will beep at me. We need a way to turn it completely off. This alone causes me to look at the camera instead of the road. (NHTSA ID: 11641251)

February 18, 2025 Complaint re: 2025 Tucson: There is a sensor on the steering column that turns off the cruise control if it can't see your eyes. This happens abruptly and slows the car down. It will cause a rear end collision if not taken care of! Has been to the dealer 5 times.is available for more inspection. There is a sensor on the steering column that turns off the cruise control if it can't see your eyes. This happens abruptly and slows the car down. It will cause a rear end collision if not taken care of! I have more documentation from the dealers but I don't have room to upload. Yes dealers have reproduce the issue. Manufacture has been notified and had us take to dealers. Warning message on dash but no time to react. (NHTSA ID: 11643566)

March 7, 2025 Complaint re: 2024 Santa Fe: The forward attention camera won't turn off even when selected off in settings… I'm unable to drive comfortably with one hand at 12 o clock without constant beeps and warnings. its MADDENING. (NHTSA ID: 11646960)

March 7, 2025 Complaint re: 2025 Santa Fe: The sensor always goes off stating my eyes aren't on the road to the point it trys to stop the vehicle in traffic. This prevents me from being able to use cruise control because the sensor is causing issues by not detecting my eyes (NHTSA ID: 11646900)

March 18, 2025 Complaint re: 2025 Tucson: In the middle of the screen, a notification to consider taking a break pops up and is very distracting and annoying even during normal driving condition. This feature makes the car less safe because it creates a distraction, especially on long road trips. There is no way to disable or turn the notification off on the vehicle. (NHTSA ID: 11649101)

March 27, 2025 Complaint re: 2024 Santa Fe: The Forward Attention Warning device located on the steering column (camera) cannot be disengaged. This device does not allow me to wear dark or polarized sunglasses, which I need since I have eye issues. This is a safety issue

for me and others, especially since I am [XXX] [XXX] and there are times when the visor doesn't cover the sun. You can 'disengage' it in the Driver Assistance settings but it does not stop the warnings nor does it stop it from disengaging your cruise control. If you look to the side of the vehicle, look up to pull the visor down, or wear polarized or dark sunglasses, it will also shut off your cruise control. I have taken the vehicle in to the Gainesville GA Hyundai and told them about this issue but they have said that there is no fix for this. BTW -- there are a bunch of posts on Reddit about this issue. This problem isn't a failure of the system, it is a design flaw. I noticed it on the day I bought the vehicle. Now, it is an annoyance to the point that I am looking at buying a new vehicle. I have only had the vehicle a year....not happy. INFORMATION REDACTED PURSUANT TO THE FREEDOM OF INFORMATION ACT (FOIA), 5 U.S.C. 552(B)(6) (NHTSA ID: 11651148)

April 2, 2025 Complaint re: 2025 Ioniq 5: The Forward Attention Warning system in the refreshed 2025 Ioniq 5 gives constant false positives for both my wife and myself when we are driving the car. With Hyundai's HDA and lane keep active, the system keeps chiming, claiming that the driver is not looking at the road when we are. In fact, the calibration is so poor that it is a safety issue. The constant random warnings are very distracting, and sometimes the system does not recapture your eyes before timing out and hard braking the car on the highway. This is really unacceptable and a safety issue that I'm surprised Hyundai thought it could release. Lots of evidence of other owners with this problem on the Internet: [XXX] [XXX] and many others. INFORMATION REDACTED PURSUANT TO THE FREEDOM OF INFORMATION ACT (FOIA), 5 U.S.C. 552(B)(6) (NHTSA ID: 11652207)

April 15, 2025 Complaint re: 2025 Santa Cruz: Make: Hyundai • Model: Santa Cruz • Year: 2025 • Trim: Limited • Mileage: 2600 miles • Date of Purchase: July 2025 Description of the Problem: I am reporting a safety issue with the Forward Attention Warning (FAW) system on my 2025 Hyundai Santa Cruz Limited, which unexpectedly disables Smart Cruise Control (SCC) during highway driving. The FAW system, which uses an in-cabin camera to monitor driver attentiveness, frequently misinterprets normal driving behavior—such as wearing polarized sunglasses or holding the steering wheel at the 12 o'clock position—as inattention. This causes

SCC to deactivate abruptly, resulting in sudden speed changes that create a safety hazard, particularly at highway speeds (e.g., 65–70 mph). The issue occurs multiple times per drive, especially when wearing sunglasses, and persists even after attempting to disable FAW in the vehicle's settings (Settings > Vehicle > Driver Assistance > Driver Attention Warning > Off). For example, while driving on [XXX], SCC deactivated without warning due to FAW detecting my sunglasses, causing the vehicle to slow unexpectedly and requiring immediate manual intervention to maintain speed. This has happened regularly, creating a risk of rear-end collisions or driver distraction. I contacted my Hyundai dealership and they stated that no software fix is available and the system is "working as designed." Hyundai's Technical Service Bulletin (TSB 25-GI-001H) acknowledges FAW issues with sunglasses and hand position but offers no solution. I also contacted Hyundai Customer Service (1-800-633-5151), but they provided no resolution. This issue is widely reported by other 2025 Hyundai owners (e.g., Tucson, Santa Fe) in online forums INFORMATION REDACTED PURSUANT TO THE FREEDOM OF INFORMATION ACT (FOIA), 5 U.S.C. 552(B)(6) (NHTSA ID: 11680808)

April 19, 2025 Complaint re: 2024 Santa Fe: I'm writing to report a recurring issue with the Forward Attention Warning (FAW) system in my 2024 Hyundai Santa Fe. The system frequently triggers warnings even when I am fully attentive and driving safely. These alerts are not only distracting, but they also reduce my confidence in the vehicle's safety systems overall. I have reviewed the settings and attempted to adjust or disable the FAW feature, but it either cannot be turned off entirely or continues to act erratically despite adjustments. I've also verified that the cabin camera is clean and unobstructed. (NHTSA ID: 11655647)

May 1, 2025 Complaint re: 2025 Santa Fe: The contact owns a 2025 Hyundai Santa Fe. The contact stated that while driving at various speeds and taking her eyes off the road ahead, there was a warning chime and a red warning light illuminated, advising the driver to "Consider taking a Break". The contact stated that the safety feature is the Driver Monitoring: Camera/Sensor and the safety feature was activating while turning her head or moving her eyes from looking ahead. The contact stated that the chime was loud and was distracting while driving. The contact stated that the failure was almost constant.

The contact called a local dealer and was advised that the system could not be deactivated. The dealer referred the contact to the NHTSA Hotline to report the issue. The manufacturer was not informed of the failure. The failure mileage was approximately 700. (NHTSA ID: 11568247)

May 9, 2025 Complaint re: 2025 Tucson: The Driver Attention Warning system goes off very often - every 10-15 minutes. The warning is startling and makes one take their eyes off the road to ascertain the cause of the warning. There is no voice message - just a series of beeps. According to the dealer the DAW cannot be disabled by the owner. (NHTSA ID 11660047)

May 19, 2025 Complaint re: 2025 Tucson: The forward attention warning system uses a camera on the steering column. It goes off constantly while wearing my required glasses. Hyundai nor the dealership will turn off the sensor. There are over 10,000 complaints for this issue and Hyundai will not correct the issue. The system will automatically adjust the speed and brake in the vehicle without the driver. I almost had a wreck yesterday when it shut the car down when the camera couldn't see my eyeballs while wearing my glasses. Something needs to be done. I'm thinking of filing a lawsuit against Hyundai as a class action. Please advise if you have any suggestions. Thank you (NHTSA ID: 11661987)

May 23, 2025 Complaint re: 2025 Ioniq 5: This car has a system called Forward Attention Warning (FAW) which monitors the driver's eyes using an in-cabin infra-red camera trained on the driver. When smart cruise control and lane following assist are both activated, FAW is forced ON by the car. If FAW thinks that the driver's eyes aren't on the road, it beeps, puts alerts on the panel visible to the driver and turns off all driving assist features. The problem I'm reporting is that the FAW system is completely broken. Even though I'm looking straight forward, it says I'm not paying attention to the road, sounds loud alerts, then eventually shuts off all of my driving assistance features. I wear glasses, and sometimes sunglasses to reduce glare when driving in bright conditions, and I've tried this with my prescription sunglasses, my normal prescription glasses and even without any glasses. The system erroneously triggers in all cases. I believe that the FAW system false positives is a safety issue because: 1. The constant false alerts are very distracting,

making the driver look at the panel in front of them to try to figure out what it's saying, taking their eyes off the road 2. Lane following assist is, itself, a safety feature, by disabling it due to these false positives from the FAW system, this is reducing safety in the vehicle 3. The FAW false positives will abruptly disable the smart cruise control, which is controlling the speed of the car, as well as the lane following assist, helping to keep the car in the lane. This abrupt disabling of these systems can cause the car to slow suddenly and depart from the lane if going around a curve. This can be very dangerous. (NHTSA ID: 11662737)

May 29, 2025 Complaint re: 2025 Ioniq 5: I purchased this car this week. The vehicle is equipped with a safety feature called Forward Attention Warning (FAW). Its purpose is to monitor the drivers attention (eyes??) and trigger an alert when the drivers attention is distracted for a period of time. I took it for the first time on a 150 mile trip. During the trip, the FAW alarm was triggered constantly. I tried changing my head position, taking my glasses on/off, changing my hands holding the wheel, etc. Nothing seemed to matter. It is not only a nuisance, but it causes other automated functions to be disabled. I was able to partially turn it off, but it still caused misfunctioning of other auto driving functions. Its not just a nuisance, its a hazard. If it cant be fixed easily, Hyundai should at least give the operator the ability to completely disable it. (NHTSA ID: 11663796)

June 4, 2025 Complaint re: 2024 Santa Fe: The Adaptive Cruise control cannot be used while wearing certain sunglasses. The car has a Driver Awareness Warning that is supposed to warn the driver if eyes are not on the road. It does not work with certain glasses. While driving at interstate speeds, I engaged the Adaptive Cruise control only to have it shut off and quickly slow down. After fumbling with different glasses while driving, I found a pair that will work with the Adaptive Cruise control. In the display, there is a toggle to turn off the Driver Awareness option, but as soon as you turn on the Adaptive Cruise, the Driver Awareness turns on again. If the Driver Awareness function cannot be turned off it is a safety issue. My favorite driving glasses cannot be used and I think this issue will cause accidents with the quick slowing on the highway. There should be a way to turn off the Driver awareness so I can use the adaptive cruise with my sunglasses. (NHTSA ID: 11664854)

June 20, 2025 Complaint re: 2024 Santa Fe: Forward attention assist keeps going off. For no reason. Eyes are on the road and head is forward (NHTSA ID: 11668224)

August 12, 2025 Complaint re: 2025 Santa Fe: The attention detection system is the worst designed feature of any vehicle I have ever experienced. It constantly dings while looking directly at vehicles ahead. It is distracting and turns off by looking DOWN directly at the steering wheel. It is a safety hazard and Hyundai needs to push out a fix ASAP or allow the feature to be disabled entirely. You cannot use cruise control without it activated and the feature is a safety hazard that makes the car LESS safe. (NHTSA ID: 11680172)

September 7, 2025 Complaint re: 2024 Santa Fe: The drive attention warning system turned off the cruise control. Causing the vehicle to unexpectedly decrease speed on the interstate, which forced the cars behind me to brake hard to avoid hitting me. This system is constantly giving alerts for no reason distracting my attention to the road. I can have both hands on the wheel and looking straight forward and the system gives an alert tone and flashes a message on the screen stating it can see my face. If the cruise control is on it will disengage the cruise. If the cruise is not engaged it just keeps alert every 20 miles or so. I have taken it to the dealer, who showed me how to turn it off , but it still alerts over and over again. (NHTSA ID: 11685592)

January 10, 2026 Complaint re: 2026 Palisade: While driving, the vehicle displays a warning of "Eyes on Road, Hands on Wheel". It has happened 6x since vehicle purchase, most recent on 10 Jan 26. The most recent occurrence was 10 Jan 26. Hyundai has issued a bulletin that this could occur when wearing sunglasses. The most recent time it was raining, no sun, no sunglasses and hands were on wheel at 10/2. Warning message displayed for several seconds (eyes on road/hands on wheel) and then went into stop mode on the highway. Tapping the brakes broke the lock and are continued without stopping. Been to dealership 3x. Hyundai says it can be caused due to sunglasses. Most recent time, no sunglasses. (NHTSA ID: 11710101)

February 4, 2026 Complaint re: 2026 Palisade: Constant and consistent Alerting (Attention) with the (steering and eye alert) icons present. NOTE: It would be helpful to understand and be told the

exact sensor or type of alert (eye camera, steering input, forward camera) that triggered the alert! As it stands, every few seconds to minutes the alert states driver is not attentive. Eventually between 2-8 warnings is unrecoverable and the cruise control shuts itself off after a myriad set of warnings. No matter what is attempted the car ends the cruise control and the driver MUST maintain control at that point (decelerating from highway/interstate speeds dramatically). Myself and all family drivers experience this IMMEDIATELY after activation. Dealership has reported no trouble after 50 miles of driving (as stated). I have video of this issue and am adding them to youtube (2026 hyundai palisade cruise control fail) for others to see. This is UNSAFE and DISTRACTING! The alerts alone are enough to deactivate this (if available, but: it cannot be deactivated!) let alone decelerating from speed for "no good reason" outside of drivers DIRECT control. The only solution I HAVE is to not use cruise control and the safety features (as they are marketed to work) and negate the safety features I purchased the vehicle for. (NHTSA ID: 11715550)

June 16, 2026 Complaint re: 2026 Palisade: It appears there is an ongoing issue with the Driver's Assistance. More specifically with automatic braking regarding forward collision. On 4 separate occasions, the vehicle has gone haywire with several alarms and icons going off at once and then sudden braking in the middle of the road before I have even realized what is going on. The issue is the car decided it was time to slam on the brakes right in the middle of the road while I was driving so it was very jarring. I have brought the vehicle to the dealership once and they kept it for 2 days to inspect the problem and could "not reproduce the problem". So they returned the vehicle to me. However, the issue occurred 3 more times after they returned it to me within 3 wks. So, I am dropping it off again for them to keep until they locate the problem now that I believe I have narrowed it down to the Driver's Assistance and forward collision issue. When I disable the driver's assistance/forward collision toggle, there "appears" to solve the issue. I have not had the same problem when that specific toggle is off as of yet. There have been no inspections from a manufacturer rep, police or insurance rep. There were a ton of warning lamps at one time just prior to the automatic braking, some regarding power train, battery, and several others. I have photos. (NHTSA ID: 11744388)

98. Owners and lessees of the Class Vehicles have also reported the Defect on social media platforms and online forums. Below is a sample of complaints posted to these forums:

- 2024 complaint: Issues with cruise control – I'm having issues with the line of site reader on my 2024 Caligraphy when the cruise control is on. It does not easily read where I am looking. I have adjusted the steering column, the wheel, etc. I keep getting warning that goes off to watch the road (I am) the assistance is limited. It gets so bad that I get a harsh warning and then the Santa Fe will turn off the cruise control and break the vehicle, while at highway speed in traffic. I have notified Hyundai about this, apparently there is no 'fix' at this time. I'm curious, does anyone else have this issue?[12]

- 2024 complaint: I wear glasses, not sunglasses. I am tall, but have everything positioned so there is a clear site line to the sensor. Driving to work the other day, approx. 8 highway miles, the warning chimed 25 times with the hard warning (the one that turns the cruise off) 8 times. I almost can't use the cruise. There was some sun glare. I'm trying to figure out how to block that on the sensor.[13]

99. Hyundai monitors social media platforms and online forums concerning its vehicles. Accordingly, Hyundai is and was aware of the numerous, widespread complaints about the Defect in the Class Vehicles

**4. Warranty Data**

100. Federal regulations require vehicle manufacturers, such as Hyundai, to comply with Early Warning Reporting requirements under the Transportation Recall Enhancement, Accountability, and Documentation Act of 2000 (the "TREAD Act"), 49 U.S.C. §§ 30101-30170, to held identify hidden safety defects.

101. Under the TREAD Act and its implementing regulations, all vehicle

---

12 https://www.reddit.com/r/HyundaiSantaFe/comments/1gipanu/issues_with_cruise_control/

13 *Id.*

manufacturers are required by law to routinely monitor and analyze consumer complaints and other safety data to determine whether vehicles or components should be recalled due to safety concerns. This includes submitting reports to NHTSA quarterly that provide information on incidents involving death or injury. The regulations also hold manufacturers responsible "for any safety-related defect or any noncompliance determined to exist in the vehicle or in any item of original equipment."

102. In addition to complaint to NHTSA and other online forums, Hyundai knew about the Defect from its own warranty data. Per the TREAD Act, Hyundai tracks customer complaints, vehicle diagnoses, and repairs from dealership technicians in a single, aggregated database. Hyundai employs persons who monitor the database for repair trends, and engineering and management staff review such trends in regular meetings. For every one complaint filed with NHTSA, Hyundai likely receives hundreds or thousands of related warranty claims. Accordingly, Hyundai has likely received thousands of Defect warranty claims from the start of production.

103. Based on pre-production testing, pre-production design failure mode analysis, production design failure mode analyses, early consumer complaints made to Hyundai's network of exclusive dealers, aggregate warranty data compiled from those dealers, repair order and parts data received from the dealers, consumer complaints to NHTSA, public consumer complaints made online, and the testing performed in response to the consumer complaints, Hyundai knows the Defect is present in all Class Vehicles, but it has not disclosed the Defect, warned consumers about it, or provided an adequate repair to all Class Vehicles.

### C. Hyundai Touts the Safety of Its Vehicles While Concealing the Defect

104. Hyundai employed and continues to employ a long term and uniform marketing message that its vehicles are of the utmost safety and dependability and

that the Odyssey was engineered to provide safe and dependable transportation to families.

105. Hyundai dedicates a page on its website to "safety," where Hyundai touts the safety features of its vehicles, including the Class Vehicles.[14] A screenshot from the "safety" webpage promises that Hyundai's technologies are protecting drivers:




106. Hyundai claims that its safety features, including the FAW, are "Making your drive safer."[15]

107. On its "safety" page, Hyundai specifically touts the FAW system, stating: "This safety feature, available on select vehicles, monitors the driver's attentiveness to the road by detecting eye position using a driver-facing camera. If it determines inattention or drowsiness, it will alert you with an audible tone and a message on the instrument panel reminding you to stay focused on the road ahead. It does not detect and provide an alert in every situation. It is the driver's responsibility to remain alert at all times."[16]

108. At all relevant times, in promotional materials, advertisements, and other representations, Hyundai and its authorized dealers maintained that the Class Vehicles were safe and made no reference to the Defect. Hyundai also engaged in a long-term advertising campaign as a reliable vehicle manufacturer. Plaintiffs and

---

[14] https://www.hyundaiusa.com/us/en/safety (last visited Aug. 26, 2026)

[15] *Id.*

[16] *Id.*

Class Members, directly, and indirectly, were exposed to, saw or heard such promotional materials and advertisements prior to purchasing or leasing the Class Vehicles and had the reasonable expectation that their Class Vehicle would be safe. Indeed, these misleading representations about the Class Vehicles' safety were material to Plaintiffs' and Class Members' ultimate decision to purchase or lease the Class Vehicles.

109. Notwithstanding Hyundai's superior and exclusive knowledge of the Defect, it failed to disclose the Defect to Plaintiffs and Class Members at the time of purchase or lease of the Class Vehicles and made no mention of the Defect in its advertisements, promotional materials, and other representations.

110. Hyundai knew or should have known that the Defect was material to owners or lessees of the Class Vehicles and that Plaintiffs and Class Members could not reasonably discover the Defect on their own prior to purchasing or leasing the Class Vehicles.

111. Hyundai had and continues to have a duty to fully disclose the true nature of the Defect to Plaintiffs and Class Members, among other reasons, because the Defect poses an unreasonable safety hazard; because Hyundai had and has exclusive knowledge or access to material facts about the Class Vehicles' DDMS that were and are not known to or reasonably discoverable by Plaintiffs and the other members of the Class; and because Hyundai actively concealed the Defect from its customers at the time of purchase or repair and thereafter.

112. Specifically, Hyundai (a) failed to disclose, at the time of purchase or repair and thereafter, any and all known material defects or material nonconformities of the Class Vehicles, including the Defect; (b) failed to disclose, at the time of purchase or repair and thereafter, that the Class Vehicles and their DDMS were not in good working order, were defective and prone to failure, and were not fit for their intended purpose; and (c) failed to disclose and actively concealed the fact that the Class Vehicles and their DDMS were defective, despite

the fact that Hyundai learned of the Defect before it placed the Class Vehicles in the stream of commerce.

113. Hyundai could have made these disclosures through its consumer-facing advertisements, sales brochures, and other marketing materials. Additionally, Hyundai could have informed its dealerships (its chosen agents) of the Defect and had them notify potential purchasers, who are intended third-party beneficiaries, prior to sale.

114. The Defect and its associated safety risks were concealed and actively suppressed in order to protect Hyundai's corporate profits from loss of sales, purchase refunds, warranty repairs, adverse publicity, and brand disengagement. Consumers were misled into believing their Class Vehicles had different qualities than what they purchased or leased, and as a result, were deprived of economic value, the benefit of their bargain, and overpaid for their Class Vehicles.

**D. Hyundai's Dealers Are Its Agents and Plaintiffs and Class Members Are Third Party Beneficiaries**

115. Hyundai controls its dealerships and the dealerships act for the benefit of Hyundai.

116. Hyundai's authorized dealerships acted as its agents in selling, leasing, and servicing the Class Vehicles. Each dealership agreement requires compliance with Hyundai's sales policies, warranty procedures, and advertising guidelines, and Hyundai exercises substantial control over the manner of sale, financing, and customer interaction. Hyundai trains and certifies dealer personnel, approves all marketing and point-of-sale materials, and retains the right to terminate dealerships that fail to follow its directives.

117. Through these dealerships, Hyundai made uniform representations to consumers concerning the safety, reliability, and performance of the Class Vehicles. Hyundai's knowledge of the Defect and its omissions are therefore imputed to its authorized dealers, and the dealers' representations and warranties

are attributable to Hyundai.

118. Plaintiffs and Class Members purchased or leased their Class Vehicles from Hyundai's authorized dealerships or online platforms operating under Hyundai's control. Accordingly, Hyundai is directly liable for, and bound by, its dealers' representations, sales practices, and warranty obligations.

119. Plaintiffs and Class Members are also intended third-party beneficiaries of the express and implied warranties issued by Hyundai, which were made to induce sales and to assure consumers that the Class Vehicles were of merchantable quality, safe, and fit for ordinary use. These warranties were intended to benefit subsequent purchasers and lessees and therefore extend to all Class Members.

## CLASS ACTION ALLEGATIONS

120. Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of the following Nationwide Class:

> All current and former owners or lessees of a Class Vehicle (as defined herein) that was purchased or leased in the United States, the District of Columbia, Puerto Rico, and all other United States territories and/or possessions.

121. Plaintiffs also bring this action, in addition to and alternatively, as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of the following individual statewide classes under the laws of their respective states and multi-state class(es) that include all states with sufficiently similar laws:

> **California Class**: All current and former owners or lessees of a Class Vehicle (as defined herein) that was purchased or leased in California.

> **Florida Class**: All current and former owners or lessees of a Class Vehicle (as defined herein) that was purchased or leased in Florida.

> **New York Class**: All current and former owners or lessees of a Class Vehicle (as defined herein) that was purchased or leased in New York.

122. Excluded from the Classes are Hyundai, its affiliates, employees, officers and directors, persons or entities that purchased the Class Vehicles for

resale, and the Judge(s) assigned to this case. Plaintiffs reserve the right to modify, change, or expand the Class definition.

123. Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Classes may be expanded or narrowed by amendment or amended complaint or narrowed at class certification.

124. Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

125. This action has been brought and may be properly maintained on behalf of the Classes proposed herein under Federal Rule of Civil Procedure 23.

126. **Numerosity:** The members of the Class are so numerous that their individual joinder is impracticable.

127. Plaintiffs are informed and believe that hundreds of thousands of Class Vehicles were sold across the United States.

128. The number and identity of Class members can be obtained through business records regularly maintained by Hyundai, its employees and agents and state agencies. Members of the Class can be notified of the pending action by e-mail and mail, supplemented by published notice, if necessary.

129. **Commonality and Predominance:** There are questions of law and fact common to the Class. These questions predominate over any questions only affecting individual Class members. The common legal and factual issues include, but are not limited to:

a. Whether Hyundai engaged in the conduct alleged herein;

b. Whether Hyundai designed, advertised, marketed, distributed, leased, sold, or otherwise placed Class Vehicles into the stream of commerce in the United States;

c. Whether the Class Vehicles contain the Defect;

d. When Hyundai learned of the Defect;

e. Whether Hyundai concealed the Defect from Plaintiffs and other Class Members;

f. Whether Plaintiffs and other Class Members have been harmed by Hyundai's conduct alleged herein; and

g. Whether Plaintiffs and Class Members are entitled to damages, restitution, restitutionary disgorgement, equitable relief, and/or other relief and the amount to be awarded.

130. **Typicality:** Plaintiffs' claims are typical of the claims of each member of the Class. Plaintiffs, like all other members of the Class, have sustained damages arising from Hyundai's conduct as alleged herein.

131. Plaintiffs and the members of the Class were and are similarly or identically harmed by Hyundai's unlawful, deceptive, unfair, systematic, and pervasive pattern of misconduct.

132. **Adequacy:** Plaintiffs will fairly and adequately represent and protect the interests of the Class members and has retained counsel who are experienced and competent trial lawyers in complex litigation and class action litigation.

133. There are no material conflicts between Plaintiffs' claims and those of the members of the Class that would make class certification inappropriate.

134. Counsel for the Class will vigorously assert the claims of all Class members.

135. **Superiority:** This suit may be maintained as a class action under Federal Rule of Civil Procedure 23(b)(3), because questions of law and fact common to the Class predominate over the questions affecting only individual members of the Class and a class action is superior to other available means for the fair and efficient adjudication of this dispute.

136. The damages suffered by individual Class members are small

compared to the burden and expense of individual prosecution of the complex and extensive litigation needed to address Hyundai's conduct.

137. Further, it would be virtually impossible for the members of the Class to individually redress effectively the wrongs done to them.

138. Even if Class members themselves could afford such individual litigation, the court system could not.

139. In addition, individualized litigation increases the delay and expense to all parties and to the court system resulting from complex legal and factual issues of the case.

140. Individualized litigation also presents a potential for inconsistent or contradictory judgments. By contrast, the class action device presents far fewer management difficulties; allows the hearing of claims which might otherwise go unaddressed because of the relative expense of bringing individual lawsuits; and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

141. Plaintiffs contemplate the eventual issuance of notice to the proposed Class members setting forth the subject and nature of the instant action.

142. Upon information and belief, Hyundai's own business records and electronic media can be utilized for the contemplated notices. To the extent that any further notice may be required, Plaintiffs would contemplate the use of additional media and/or mailings.

///

///

///

///

///

///

///

## CLAIMS FOR RELIEF

### A. Claims Brought on Behalf of the Nationwide Class

### COUNT I

### Violation of California's Unfair Competition Law

### (Cal. Bus. & Prof. Code § 17200, *et seq.*)

### (Plaintiffs Ledezma and Leone Individually and on behalf of Nationwide Class or, in the alternative, the California Class)

143. Plaintiffs Ledezma and Leone ("Plaintiffs" for purposes of the California Class) incorporate by reference each preceding paragraph as though fully set forth herein.

144. Plaintiffs bring this Count individually and on behalf of the other members of the California Class who purchased or leased Class Vehicles in states with state consumer laws that are similar to California's Unfair Competition Law (the "UCL") as applied to the facts of this case,[17] or, in the alternative, on behalf of members of the California Class. The application of California law to the claims of the Nationwide Class is proper and constitutional. Defendant Hyundai has its principal place of business in California, where it maintains its headquarters, and the challenged conduct— including the design and testing of the Class Vehicles, the formulation and dissemination of uniform misrepresentations and omissions, the development of nationwide marketing and warranty policies, and the handling of consumer complaints and corrective-action decisions—emanated from

[17] These states include the following: Florida (Fla. Stat. § 501.201 *et seq.*); Illinois (815 ILCS 505/2, *et seq.*); Massachusetts (Mass. Gen. Laws Ch. 93Am *et seq.*); Michigan (Mich. Comp. Laws § 445.901, *et seq.*); Minnesota (Minn. Stat. § 325F.68, *et seq.*); Missouri (Mo. Rev. Stat. § 407.010, *et seq.*); New Hampshire (N.H. Rev. Stat. § 358-A:1); New Jersey (N.J. Stat. § 56:9-1, *et seq.*); New York (N.Y. Gen. Bus. Law §§ 349, 350 *et seq.*); Rhode Island (R.I. Gen. L. Ch. 6-13.1); Texas (Tex. Bus. & Com. Code § 17.41, *et seq.*); Washington (Wash. Rev. Code § 19.86010, *et seq.*); and Wisconsin (WIS. STAT. § 100.18, *et seq.*).

Hyundai's California offices. California therefore has a significant aggregation of contacts with each Class member's claims sufficient to satisfy constitutional due process. Further, under California's choice-of-law rules, California law may be applied on a classwide basis because the interests of other states do not materially conflict with California's strong interest in regulating misconduct that originated within its borders. To the extent any material conflict is shown at the class certification stage, Plaintiffs reserve the right to propose subclasses or pursue claims under the laws of individual states as appropriate.

145. The UCL and similar laws in other states, prohibits any "unlawful," "fraudulent" or "unfair" business act or practice and any "unfair, deceptive, untrue or misleading advertising."

146. In the course of conducting business, Hyundai committed "unlawful" business practices by, *inter alia*, omitting material facts concerning the safety of the Class Vehicles, making deceptive representations as set forth more fully herein, and violating Civil Code §§ 1770(a)(5), (7), (9) and (16) under the California Consumers Legal Remedies Act, California Business & Professions Code § 17500, *et seq.*, and the common law, including breach of express warranty, breach of implied warranty of merchantability, and unjust enrichment.

147. Plaintiffs and the California Class reserve the right to allege other violations of law constituting other unlawful business acts or practices as discovery proceeds. Hyundai's unlawful conduct at issue is ongoing and continues to this date.

148. Hyundai's omissions, non-disclosures, acts, and practices as alleged herein constitute "unfair" business acts and practices within the meaning of the UCL, in that Hyundai's conduct was substantially injurious to consumers, offended public policy, and was unethical and unscrupulous. By concealing and misrepresenting material safety facts, Hyundai violated the "unfair" prong of the UCL because its conduct contravenes established public policies embodied in the

CLRA, which prohibits deceptive omissions and misrepresentations in consumer transactions, and Section 5 of the FTC Act, which bars unfair or deceptive practices in commerce. These policies collectively reflect a strong legislative determination that consumers must be protected from unsafe, defective, and deceptively marketed products. Plaintiffs reserve the right to identify additional public policy violations as discovery proceeds. While Plaintiffs and the other California Class Members were harmed, Hyundai was unjustly enriched by its violations of consumer protection and unfair competition laws.

149. As a result of their reliance on Hyundai's omissions and/or misrepresentations, owners and lessees of the Class Vehicles have suffered injury in fact and have lost money as a result of Hyundai's unfair conduct, including the loss of money, property, and/or value in connection with the purchase or lease of their Class Vehicles.

150. Hyundai's above-described wrongful acts and practices also constitute "fraudulent" business acts and practices within the meaning of California Business and Professions Code § 17200 in that the representations and omissions described herein are false, misleading and/or likely to deceive reasonable consumers. Hyundai knew that the Class Vehicles suffered from the Defect, were defectively designed and/or manufactured, and were not suitable for their intended use. In misrepresenting the Class Vehicles and failing to disclose the Defect, Hyundai knowingly and intentionally concealed material facts and breached its duty not to do so. The facts misrepresented, concealed or not disclosed by Hyundai to Plaintiffs and the other California Class Members are material because a reasonable person would have considered safety issues to be important in deciding whether to purchase or lease Hyundai's Class Vehicles, or to pay less for them. Had Plaintiffs and the other California Class Members known that the Class Vehicles suffered from the Defect described herein, they would not have purchased or leased the Class Vehicles or would have paid less for them.

151. Hyundai continues to conceal the defective nature of the Class Vehicles and the Defect even after Plaintiffs and the other California Class Members began to report problems. Indeed, Hyundai continues to cover up and conceal the true nature of this systematic problem today. Hyundai's conduct caused and continues to cause substantial injury to Plaintiffs and the other California Class Members.

152. Hyundai's unfair or deceptive acts or practices occurred repeatedly in Hyundai's trade or business and were capable of deceiving a substantial portion of the purchasing public.

153. As a direct and proximate result of Hyundai's unfair and deceptive practices, Plaintiffs and the other California Class Members have suffered and will continue to suffer actual damages.

154. Through its unfair acts and practices, Defendants have improperly obtained money from Plaintiffs and California Class Members. As such, Plaintiffs request that this Court cause Defendants to restore this money to Plaintiffs and all California Class Members, and to enjoin Defendants from continuing to violate the UCL as discussed herein and/or from violating the UCL in the future. Otherwise, Plaintiffs and Class Members may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

155. Plaintiffs and the Class lack an adequate legal remedy to address Hyundai's misconduct. Legal damages alone cannot remedy the full extent of the harm because Plaintiffs and Class members continue to own/lease and drive their Class Vehicles and remain exposed to the Defect that Hyundai continues to conceal and refuses to fix, and damages do not prevent Hyundai from continuing to misrepresent and conceal the safety risks associated with the Class Vehicles. Restitution is necessary to restore to Plaintiffs and the California Class the monies wrongfully obtained by Hyundai, and injunctive relief is required to ensure that Hyundai discloses the defect and ceases its unlawful conduct. Additionally, any

legal remedy that does exist is not as prompt, certain, or efficient as the equitable remedies sought, including because the claims giving rise to potential damages are subject to legal defenses and more stringent elements not applicable under the UCL, and the scope of actionable misconduct under the unfair prong of the UCL is broader than other available claims. Even if Plaintiffs prevail and recover legal damages under certain claims, those remedies may represent recovery for different harm than that which could be remedied under the UCL. Thus, Plaintiffs may be entitled to restitution or injunctive relief under the UCL even if legal damages are unavailable, limited, or directed at different injuries. Plaintiffs plead this claim separately and in the alternative under Federal Rule of Civil Procedure 8(a)(3), such that if the Court dismisses or enters judgment against Plaintiff on his damages claims, she will otherwise lack an adequate remedy at law.

## COUNT II

**Violation of California's Consumer Legal Remedies Act**

**(Cal. Civil Code § 1750, *et seq.*)**

**(Plaintiffs Ledezma and Leone Individually and on behalf of Nationwide Class or, in the alternative, the California Class)**

156. Plaintiffs Ledezma and Leone ("Plaintiffs" for purposes of the California Class) incorporates by reference each preceding paragraph as though fully set forth herein.

157. Plaintiffs bring this Count on behalf of herself and on behalf of the other members of the Class who purchased or leased Class Vehicles in states with state consumer laws that are similar to California's Consumers Legal Remedies Act (the "CLRA") as applied to the facts of this case,[18] or, in the alternative, on

---

[18] These states include the following: Florida (Fla. Stat. § 501.201 *et seq.*); Illinois (815 ILCS 505/2, *et seq.*); Massachusetts (Mass. Gen. Laws Ch. 93Am *et seq.*); Michigan (Mich. Comp. Laws § 445.901, *et seq.*); Minnesota (Minn. Stat. § 325F.68, *et seq.*); Missouri (Mo. Rev. Stat. § 407.010, *et seq.*); New Hampshire (N.H. Rev. Stat. § 358-A:1); New Jersey (N.J. Stat. § 56:9-1, *et seq.*); New York

behalf of members of the California Class. The application of California law to the claims of the Nationwide Class is proper and constitutional. Defendant Hyundai has its principal place of business in California, where it maintains its headquarters, and the challenged conduct— including the design and testing of the Class Vehicles, the formulation and dissemination of uniform misrepresentations and omissions, the development of nationwide marketing and warranty policies, and the handling of consumer complaints and corrective-action decisions—emanated from Hyundai's California offices. California therefore has a significant aggregation of contacts with each Class member's claims sufficient to satisfy constitutional due process. Further, under California's choice-of-law rules, California law may be applied on a classwide basis because the interests of other states do not materially conflict with California's strong interest in regulating misconduct that originated within its borders. To the extent any material conflict is shown at the class certification stage, Plaintiffs reserve the right to propose subclasses or pursue claims under the laws of individual states as appropriate.

158. Defendants are "persons" as defined by California Civil Code § 1761(c).

159. Plaintiffs and the California Class Members are "consumers" within the meaning of California Civil Code § 1761(d).

160. By failing to disclose and concealing the defective nature of the Class Vehicles' safety systems, including the FAW and DDMS, from Plaintiffs and the other California Class Members, Hyundai violated California Civil Code § 1770(a), as they represented that the Class Vehicles had characteristics and benefits that they do not have, represented that the Class Vehicles were of a particular standard, quality, or grade when they were of another, and advertised

---

(N.Y. Gen. Bus. Law §§ 349, 350 *et seq.*); Rhode Island (R.I. Gen. L. Ch. 6-13.1); Texas (Tex. Bus. & Com. Code § 17.41, *et seq.*); Washington (Wash. Rev. Code § 19.86010, *et seq.*); and Wisconsin (WIS. STAT. § 100.18, *et seq.*).

the Class Vehicles with the intent not to sell them as advertised. *See* Cal. Civ. Code §§ 1770(a)(5), (7), (9) and (16).

161. Hyundai's unfair and deceptive acts or practices occurred repeatedly in Hyundai's trade or business, were capable of deceiving a substantial portion of the purchasing public and imposed a serious safety risk on the public.

162. Hyundai knew that the Class Vehicles suffered from an inherent safety defect, were defectively designed or manufactured, and were not suitable for their intended use.

163. Hyundai was under a duty to Plaintiffs and the other California Class Members to disclose the defective nature of the Class Vehicles because: a) Hyundai was in a superior position to know the true state of facts about the safety defect contained in the Class Vehicles; b) Plaintiffs and the other California Class Members could not reasonably have been expected to learn or discover that their Class Vehicles had a dangerous safety defect until after they purchased or leased them; and c) Hyundai knew that Plaintiffs and the other California Class Members could not reasonably have been expected to learn about or discover the Defect.

164. By failing to disclose the Defect, Hyundai knowingly and intentionally concealed material facts and breached their duty not to do so.

165. The facts concealed or not disclosed by Hyundai to Plaintiffs and the other California Class Members are material because a reasonable consumer would have considered them to be important in deciding whether to purchase the Class Vehicles, or to pay less for them. Had Plaintiffs and the other California Class Members known that the Class Vehicles were defective, they would not have purchased the Class Vehicles or would have paid less for them.

166. Plaintiffs and the other California Class Members are reasonable consumers who do not expect that their vehicles will suffer from the Defect. That is the reasonable and objective consumer expectation for vehicles.

167. As a result of Hyundai's misconduct, Plaintiffs and the other

California Class Members have been harmed and have suffered actual damages in that the Class Vehicles are defective and require repairs or replacement.

168. As a direct and proximate result of Hyundai's unfair or deceptive acts or practices, Plaintiffs and the other California Class Members have suffered and will continue to suffer actual damages.

169. Pursuant to Cal. Civ. Code § 1782(a), on September 9, 2026, Hyundai was notified in writing by certified mail of the particular violations of Section 1770 of the CLRA, which notification demanded that Hyundai rectify the problems associated with the actions detailed above and give notice to all affected consumers of Hyundai's intent to so act. A copy of the letter is attached hereto as **Exhibit B**.

170. If Hyundai fails to rectify or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days of the date of written notice, pursuant to section 1782 of the CLRA, Plaintiff intends to amend the complaint to seek actual, punitive and statutory damages.

171. Plaintiffs seek all available relief under the CLRA for all violations complained of herein.

172. Accordingly, Plaintiffs and the other California Class Members seek an order enjoining the acts and practices described above.

173. Pursuant to § 1780(d) of the CLRA, attached hereto as **Exhibit C** is the affidavit showing that this action has been commenced in the proper forum.

**B. Claims Brought on Behalf of the California Class**

**COUNT III**

**Breach of Express Warranty**

**(U.C.C. § 2-313; Cal. Comm. Code §§ 2313 and 10210)**

**(Plaintiffs Ledezma and Leone Individually and on behalf of the California Class)**

174. Plaintiffs Ldezma and Leone ("Plaintiffs" for purposes of the California Class) incorporates and realleges each preceding paragraph as though

fully set forth herein.

175. Plaintiffs and the other California Class Members purchased or leased the Class Vehicles from Defendants by and through their authorized agents for retail sale or were otherwise expected to be the eventual purchasers or lessees of the Class Vehicles. At all relevant times, Hyundai was the manufacturer, distributor, warrantor, and/or seller of the Class Vehicles and knew or had reason to know of the particular purpose for which the Class Vehicles were purchased or leased.

176. Hyundai is and was at all relevant times a "merchant" and "seller" within the meaning of the Uniform Commercial Code §§ 2-103, 2-104(1) and Cal. Comm. Code §§ 2103(d), 2104 and §§ Cal. Comm. Code §§ 10103(a)(2) and (c).

177. With respect to leases, Hyundai is and was at all relevant times a "lessor" within the meaning of the Uniform Commercial Code, § 2A-103(1)(p) and Cal. Comm. Code § 10103.

178. The Class Vehicles are and were at all relevant times "goods" within the meaning of the Uniform Commercial Code, § 2-105(a) and Cal. Comm Code § 2105 and § 10103(a)(8).

179. In connection with the purchase or lease of each of the Class Vehicles, Hyundai provides warranty coverage for the Class Vehicles under one or more manufacturer's warranties. Under these warranties, Hyundai promised to repair or replace "any component manufactured or originally installed by Hyundai that is defective in material or factory workmanship, under normal use and maintenance."

180. These affirmations of fact, promises, and undertakings constitute express warranties within the meaning of U.C.C. § 2-313 and Cal. Comm. Code § 2313 and 10210 and became part of the basis of the bargain between Hyundai and Plaintiffs and the other California Class Members.

181. Hyundai breached the express warranties because the Class Vehicles were sold and leased with a defective DDMS that causes distracting and constant

false alarms and warnings during normal operation of the vehicle and sudden braking and disengagement of the cruise control. Despite its warranties, Hyundai has refused and/or failed to repair the Defect or provide an effective remedy.

182. By failing to disclose the Defect and refusing to provide an effective repair, Hyundai deprived Plaintiffs and the California Class Members of the benefit of their bargain and breached the express warranties promising to correct defects in materials or workmanship.

183. Plaintiffs and the California Class Members performed all conditions precedent under the contract between the parties.

184. As described above, Hyundai was provided pre-suit notice of the Defect, and as such has been afforded a reasonable opportunity to cure their breach of written warranties. Any additional time to do so would be unnecessary and futile because Hyundai has known of and concealed the Defect and, on information and belief, has refused to repair or replace necessary components despite the Defect's existence at the time of sale or lease of the Class Vehicles.

185. Hyundai is in privity with Plaintiff and members of the California Class. Plaintiffs and California Class Members, not the dealers, were the intended beneficiaries of the Class Vehicles and the associated written warranties. Hyundai designed and manufactured the Class Vehicles, and created the advertising, marketing, and representations at issue and warranted the Class Vehicles to Plaintiffs and members of the California Class, either directly or through authorized agents. Purchase or lease through authorized dealers is sufficient to create privity because such authorized sellers act as Hyundai's agents for the purpose of the sale and lease of the Class Vehicles.

186. Hyundai's breach was willful and knowing. Hyundai knew that the Defect existed at the time of sale but nevertheless continued to sell and lease Class Vehicles while representing them as defect-free.

187. As a direct and proximate result of Hyundai's breach of express

warranties, Plaintiffs and the other California Class Members have suffered damages, including the diminished value of their vehicles, out-of-pocket repair costs, and loss of use.

188. Because of Hyundai's breach of express warranty as set forth herein, Plaintiffs and the other members of the California Class assert, as additional and/or alternative remedies pursuant to U.C.C. § 2-608 and Cal. Comm. Code §§ 2608 and 10517, revocation of acceptance and restitution of all purchase or lease payments, together with incidental and consequential damages as permitted by law.

**COUNT IV**

**Breach of Implied Warranty**

**(U.C.C. § 2-314, Cal. Comm. Code §§ 2314 and 10212)**

**(Plaintiffs Ledezma and Leone Individually and on behalf of the California Class)**

189. Plaintiffs Ledezma and Leone ("Plaintiffs" for purposes of the California Class) incorporates and realleges each preceding paragraph as though fully set forth herein.

190. Plaintiffs and the other California Class Members purchased or leased the Class Vehicles from Hyundai by and through its authorized agents for retail sales. At all relevant times, Hyundai was the manufacturer, distributor, warrantor, and/or seller of Class Vehicles. Hyundai knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

191. Hyundai is and was at all relevant times a "merchant" and "seller" within the meaning of the Uniform Commercial Code, §§ 2-103, 2-104(1) and Cal. Comm. Code §§ 2103(d), 2104 and §§ Cal. Comm. Code §§ 10103(a)(2) and (c).

192. With respect to leases, Hyundai is and was at all relevant times a "lessor" within the meaning of the Uniform Commercial Code, § 2A-103(1)(p) and Cal. Comm. Code § 10103.

193. The Class Vehicles are and were at all relevant times "goods" within the meaning of the Uniform Commercial Code, § 2-105(a) and Cal. Comm Code § 2105 and § 10103(a)(8).

194. Under Uniform Commercial Code § 2-314 and Cal. Comm. Code §§ 2314 and 10212, every sale of consumer goods carries with it an implied warranty that the goods are merchantable and fit for the ordinary purposes for which such goods are used, including safe transportation.

195. Hyundai impliedly warranted that the Class Vehicles were of merchantable quality and fit for the ordinary purposes for which vehicles are used, would pass without objection in the trade, and would conform to the promises or affirmations made on their labels, marketing and warranties.

196. In fact, the Class Vehicles were sold and leased with a defective DDMS that causes repeated and distracting false warnings and sudden braking during normal operation of the vehicle. Because of this Defect, the Class Vehicles were not of merchantable quality, were unfit for their ordinary purpose, and failed to conform to the promises and affirmations made by Defendants.

197. The Defect substantially impairs the use, value, and safety of the Class Vehicles. As such, the vehicles would not pass without objection in the trade and would not be accepted by a reasonable consumer if the Defect were disclosed.

198. At the time of sale or lease, Hyundai knew or should have known that the Class Vehicles were defective and not in merchantable condition, yet they failed to disclose the defect and refused to provide a permanent or adequate repair.

199. Plaintiffs and the California Class Members performed all conditions precedent under the contract between the parties.

200. Hyundai is in privity with Plaintiffs and the California Class Members because the retail transactions were made pursuant to Hyundai's express and implied warranties. Plaintiffs and the California Class Members were the intended beneficiaries of those transactions and of the implied warranties arising

therefrom.

201. As described above, Hyundai was provided pre-suit notice of the Defect, and as such has been afforded a reasonable opportunity to cure their breach of written warranties. Any additional time to do so would be unnecessary and futile because Hyundai has known of and concealed the Defect and, on information and belief, has refused to repair or replace the necessary components free of charge despite the Defect's existence at the time of sale or lease of the Class Vehicles.

202. Hyundai's breach of implied warranty affected all Class Vehicles uniformly and constitutes a continuing course of conduct.

203. As a direct and proximate result of Hyundai's breach of implied warranty, Plaintiffs and the California Class Members have suffered damages, including the difference in value between the vehicles as delivered and as warranted, incidental and consequential damages, and diminution in resale value.

## COUNT V

### Unjust Enrichment

### (Plaintiffs Ledezma and Leone Individually and on behalf of the California Class)

204. Plaintiffs Ledezma and Leone ("Plaintiffs" for purposes of the California Class) incorporates and realleges each preceding paragraph as though fully set forth herein.

205. Plaintiffs and the other members of the California Class conferred a benefit on Hyundai by leasing or purchasing the Class Vehicles. Hyundai was and should have been reasonably expected to provide Class Vehicles free from the Defect.

206. Hyundai unjustly profited from the lease and sale of the Class Vehicles at inflated prices as a result of their false representations, omissions, and concealment of the Defect in the Class Vehicles.

207. As a proximate result of Hyundai's false representations, omissions,

and concealment of the Defect in the Class Vehicles, and as a result of Hyundai's ill-gotten gains, benefits and profits, Hyundai has been unjustly enriched at the expense of Plaintiffs and the other California Class Members. It would be inequitable for Hyundai to retain their ill-gotten profits without paying the value thereof to Plaintiff and the other California Class Members.

208. There is a direct relationship between Hyundai on the one hand, Plaintiffs and the other California Class Members on the other, sufficient to support a claim for unjust enrichment. Hyundai failed to disclose the Defect to increase retail sales, which in turn increased wholesale sales. Conversely, Hyundai knew that disclosure of the Defect would suppress retail and wholesale sales of the Class Vehicles, suppress leasing of the Class Vehicles, and would negatively impact the reputation of Hyundai's brand among Plaintiffs and the other California Class Members. Hyundai also knew its concealment and suppression of the Defect would discourage Plaintiffs and the other California Class Members from seeking replacement or repair concerning the Defect, thereby increasing profits and/or avoiding the cost of such replacement or repairs.

209. Plaintiffs and the other California Class Members are entitled to restitution of the amount of Hyundai's ill-gotten gains, benefits and profits, including interest, resulting from their unlawful, unjust and inequitable conduct.

**C. Claims Brought on Behalf of the Florida Class**

**COUNT VI**

**Violation of the Florida Deceptive and Unfair Trade Practice Act**

**(Fla. Stat. §§ 501.201, *et seq.*)**

**(Plaintiff Toye Individually and on behalf of the Florida Class)**

210. Plaintiff Toye ("Plaintiff" for purposes of the Florida Class) incorporates by reference each allegation as if fully set forth herein.

211. Plaintiff brings this action pursuant to the Florida Deceptive and Unfair Trade Practices, Act, Fla. Stat. §§ 501.201, *et seq.* ("FDUPTA"). The stated

purpose of FDUPTA is to “protect the consuming public . . . from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce.” Fla Stat. § 501.202(2).

212. Plaintiff and the other Florida Class Members are consumers as defined by Fla. Stat. § 501.203. The Class Vehicles are goods within the meaning of FDUPTA. Hyundai engaged in trade or commerce within the meaning of FDUPTA.

213. Florida Statute § 501.204(1) declares unlawful “[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce.” FDUPTA also prohibits false and misleading advertising.

214. Hyundai has violated FDUPTA by engaging inn the unfair and deceptive practices described herein which offend public policies and are immoral, unethical, unscrupulous, and substantially injurious to consumers.

215. Plaintiff and other members of the Florida Class have been aggrieved by Hyundai’s unfair and deceptive acts and practices because they paid for Class Vehicles that had a safety defect.

216. The harm suffered by Plaintiff and other Florida Class Members were directly and proximately caused by the deceptive, misleading and unfair practices of Hyundai, as described herein.

217. Pursuant to Fla. Stat. § 501.211(1), Plaintiff and Florida Class Members seek restitution, disgorgement, and damages.

218. Additionally, pursuant to Fla. Stat. §§ 501.211(2) and 501.2105, Plaintiff and Florida Class Members seek damages, attorneys’ fees, and costs.

///

///

///

///

**COUNT VII**

**Breach of Express Warranty**

**(Fla. Stat. §§ 672.313 and 680.21)**

**(Plaintiff Toye Individually and on behalf of the Florida Class)**

219. Plaintiff Toye ("Plaintiff" for purposes of the Florida Class) incorporates by reference each allegation as if fully set forth herein.

220. Hyundai is and was at all relevant times a "merchant" with respect to motor vehicles under Fla. Stat. § 672.104 and is a "seller" of motor vehicles under § 672.103.

221. With respect to leases, Hyundai is and was all relevant times a "lessor" of motor vehicles under Fla. Stat. § 680.1031.

222. The Class Vehicles are and were at all relevant times "goods" within the meaning of Fla. Stat. § 672. 105 and § 680.1031.

223. In its New Vehicle Limited Warranty, Honda expressly warranted that it would repair or replace "any component manufactured or originally installed by Hyundai that is defective in material or factory workmanship, under normal use and maintenance."

224. Hyundai's New Vehicle Limited Warranty formed the basis of the bargain that was reached when Plaintiff and the other Florida Class members purchased or leased their Class Vehicles with the Defect.

225. Honda breached the express warranty to repair parts defective in material or workmanship by failing to repair the Defect.

226. Hyundai has not repaired, and has been unable to repair, the Defect in Plaintiff's Class Vehicle or the Class Vehicles of the other Florida Class Members.

227. Hyundai was provided notice of the Defect through numerous complaints filed against it directly and through its dealers, as well as its own internal testing.

228. The New Vehicle Limited Warranty fails in its essential purpose because the contractual remedy of repair/replacement is insufficient to make Plaintiff and the other Florida Class Members whole and because Hyundai has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

229. Accordingly, recovery by Plaintiff and the other Florida Class Members is not limited to the limited warranty of repair/replacement, and Plaintiff, individually and on behalf of the other Florida Class Members, seek all remedies as allowed by law.

230. Also, as alleged in more detail herein, at the time that Hyundai warranted and sold the Class Vehicles it knew that the Class Vehicles did not conform to the warranty and were inherently defective, and Hyundai improperly concealed material facts regarding its Class Vehicles. Plaintiff and the other Florida Class Members were, therefore, induced to purchase or lease the Class Vehicles under false pretenses.

231. Moreover, much of the damage flowing from the Class Vehicles cannot be resolved through the limited remedy of repairs, as those incidental and consequential damages have already been suffered due to Hyundai's improper conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiff's and the other Florida Class Members' remedies would be insufficient to make Plaintiff and the other Florida Class Members whole.

232. As a direct and proximate result of Hyundai's breach of express warranty, Plaintiff and the other Florida Class Members have been damaged in an amount to be determined at trial.

///

///

///

**<u>COUNT VIII</u>**

**Breach of Implied Warranty**

**(Fla. Stat. §§ 672.101, *et seq*.)**

**(Plaintiff Toye Individually and on behalf of the Florida Class)**

233. Plaintiff Toye ("Plaintiff" for purposes of the Florida Class) incorporates by reference each allegation as if fully set forth herein.

234. Hyundai is a merchant with respect to the Class Vehicles, as that term is used in Fla. Stat. § 672.104.

235. The Class Vehicles are goods as that term is used in Fla. Stat. § 672.105.

236. Plaintiff and Florida Class members are buyers as that term is used in Fla. Stat. § 672.103, and Hyundai is a seller as that term is used in Fla. Stat. § 672.103.

237. The Class Vehicles, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars are used.

238. Hyundai sold and leased the Class Vehicles as safe automobiles that would function as reasonably expected by consumers and in accordance with industry standards. Such expectations formed the basis of the bargain in Plaintiff's and Class Members' decisions to purchase the Class Vehicles.

239. There is privity because Plaintiff and other Florida Class Members purchased the Class Vehicles from Hyundai, or through Hyundai's authorized agents for retail sales. Upon information and belief, Hyundai controlled the marketing and sale of the Class Vehicles, Hyundai set the MSRP and controlled any dealership incentives which may have been available, the dealership executed the purchase agreement on behalf of Hyundai, the dealership acted as Hyundai's agent in connection with the sale, and the dealership bound Hyundai to contractual obligations with the sale of the Class Vehicles. At all relevant times, Hyundai was the manufacturer, distributor, warrantor, and/or seller of the Class Vehicles.

240. Hyundai knew or had reason to know of the specific use for which the Class Vehicles were purchased.

241. Because of the Defect, the Class Vehicles were not in merchantable condition when sold and are not fit for the ordinary purpose of providing safe transportation.

242. Hyundai knew about the Defect in the Class Vehicles, allowing Hyundai to cure their breach of warranty if it chose to do so.

243. The New Vehicle Limited Warranty fails in its essential purpose because the contractual remedy of repair/replacement is insufficient to make Plaintiff and the other Florida Class Members whole and because Hyundai has failed and/or has refused to adequately provide the promised remedies within a reasonable time. Accordingly, the implied warranty of merchantability is not limited to the Limited Warranty period.

244. Hyundai has actual knowledge of the Defect as alleged herein, satisfying any notice requirement. Moreover, due to Hyundai's failure to remedy the Defect, any notice requirement is futile.

245. Plaintiff and Florida Class Members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Hyundai's conduct described herein. Affording Hyundai a reasonable opportunity to cure the breach of written warranties therefore would be unnecessary and futile.

246. Hyundai was provided notice of these issues by numerous complaints filed against it, internal investigations, postings on websites, and other sources.

247. As a direct and proximate result of Hyundai's breach of the implied warranty of merchantability, Plaintiff and the Florida Class have been damaged in an amount to be proven at trial.

///

///

## COUNT IX

### Unjust Enrichment

### (Plaintiff Toye Individually and on behalf of the Florida Class)

248. Plaintiff Toye ("Plaintiff" for purposes of the Florida Class) incorporates by reference each allegation as if fully set forth herein.

249. Plaintiff and the other members of the Florida Class conferred a benefit on Hyundai by leasing or purchasing the Class Vehicles. Hyundai was and should have been reasonably expected to provide Class Vehicles free from the Defect.

250. Hyundai unjustly profited from the lease and sale of the Class Vehicles at inflated prices as a result of their misrepresentations, omissions, and concealment of the Defect in the Class Vehicles.

251. As a proximate result of Hyundai's false representations, omissions, and concealment of the Defect in the Class Vehicles, and as a result of Hyundai's ill-gotten gains, benefits and profits, Hyundai has been unjustly enriched at the expense of Plaintiff and the other Florida Class Members. It would be inequitable for Hyundai to retain their ill-gotten profits without paying the value thereof to Plaintiff and the other Florida Class Members.

252. There is a direct relationship between Hyundai on the one hand, and Plaintiff and the other Florida Class Members on the other, sufficient to support a claim for unjust enrichment. Hyundai failed to disclose the Defect to improve retail sales, which in turn improved wholesale sales. Conversely, Hyundai knew that disclosure of the Defect would suppress retail and wholesale sales of the Class Vehicles, suppress leasing of the Class Vehicles, and would negatively impact the reputation of Hyundai's brand among Plaintiff and the other Florida Class Members. Hyundai also knew its concealment and suppression of the Defect would discourage Plaintiff and the other Florida Class Members from seeking replacement or repair concerning the Defect, thereby increasing profits and/or

avoiding the cost of such replacement or repairs.

253. Plaintiff and the other Florida Class Members are entitled to restitution of the amount of Hyundai's ill-gotten gains, benefits and profits, including interest, resulting from their unlawful, unjust and inequitable conduct.

**D. Claims Brought on Behalf of the New York Class**

**COUNT X**

**Violation of New York General Business Law §§ 349 and 350**

**(Plaintiff Weisbrot Individually and on behalf of the New York Class)**

254. Plaintiff Weisbrot ("Plaintiff" for purposes of the New York Class) incorporates by reference each allegation as if fully set forth herein.

255. New York General Business Law ("NYGBL") § 349 prohibits "[u]nfair, deceptive, or abusive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service" in the State.

256. NYGBL § 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service."

257. False advertising includes "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in light of such representations [made] with respect to the commodity …." NYGBL § 350-A.1. By falsely marketing the characteristics of the Class Vehicles, and failing to reveal the Defect, Hyundai violated NYGBL § 350.

258. Hyundai's unfair and deceptive acts or practices occurred repeatedly in Hyundai's trade or business, were capable of deceiving a substantial portion of the purchasing public and imposed a serious safety risk on the public.

259. Hyundai knew that the Class Vehicles' DDMS suffered from an inherent defect, were defectively designed or manufactured, and were not suitable for their intended use.

260. Hyundai intended for Plaintiff and New York Class Members to rely

on Hyundai's omissions regarding the Defect.

261. Plaintiff and New York Class Members justifiably acted or relied to their detriment upon Hyundai's omissions of fact concerning the above-described Defect, as evidenced by Plaintiff's and New York Class Members' purchases and leases of Class Vehicles.

262. Hyundai was under a duty to Plaintiff and the other New York Class Members to disclose the defective nature of the Class Vehicles' DDMS because: a) Hyundai was in a superior position to know the true state of facts about the safety defect contained in the Class Vehicles; b) Plaintiff and the other New York Class Members could not reasonably have been expected to learn or discover that their DDMS has a dangerous safety defect until after they purchased the Class Vehicles; and c) Hyundai knew that Plaintiff and the other New York Class Members could not reasonably have been expected to learn about or discover the Defect.

263. By failing to disclose the Defect, Hyundai knowingly and intentionally concealed material facts and breached their duty not to do so.

264. The facts concealed or not disclosed by Hyundai to Plaintiff and the other New York Class Members are material because a reasonable consumer would have considered them to be important in deciding whether to purchase the Class Vehicles, or to pay less for them. Had Plaintiff and the other New York Class Members known that the Class Vehicles' DDMS is defective, they would not have purchased the Class Vehicles or would have paid less for them.

265. Plaintiff and the other New York Class Members are reasonable consumers who do not expect that their vehicles will suffer from the Defect. That is the reasonable and objective consumer expectation for vehicles.

266. Hyundai's omissions have deceived Plaintiff, and those same business practices have deceived or are likely to deceive members of the consuming public and the other members of the New York Class.

267. In addition to being deceptive, the business practices of Hyundai were unfair because Hyundai knowingly sold Plaintiff and New York Class Members vehicles that are essentially unusable for the purposes for which they were sold. The injuries to Plaintiff and New York Class Members are substantial and greatly outweigh any alleged countervailing benefit to Plaintiff and New York Class Members or to competition under all of the circumstances. Moreover, in light of Hyundai's exclusive knowledge of the Defect, the injury is not one that Plaintiff and New York Class Members could have reasonably avoided.

268. As a direct and proximate result of Hyundai's unfair and deceptive trade practices, Plaintiff and New York Class Members have suffered ascertainable loss and actual damages. Plaintiff and New York Class Members who purchased or leased the Class Vehicles would not have purchased or leased the Class Vehicles, or, alternatively, would have paid less for them had the truth about the Defect been disclosed. Plaintiff and New York Class Members are entitled to recover actual damages, attorneys' fees and costs, and all other relief allowable by law.

## COUNT XI

**Breach of Express Warranty**

**(N.Y. U.C.C. §§ 2-313 and 2-A-210)**

**(Plaintiff Weisbrot Individually and on behalf of the New York Class)**

269. Plaintiff Weisbrot ("Plaintiff" for purposes of the New York Class) incorporates by reference each allegation as if fully set forth herein.

270. Plaintiff and the other New York Class Members purchased or leased the Class Vehicles from Hyundai by and through their authorized agents for retail sale or were otherwise expected to be the eventual purchasers or lessees of the Class Vehicles. At all relevant times, Hyundai was the manufacturer, distributor, warrantor, and/or seller of the Class Vehicles and knew or had reason to know of the particular purpose for which the Class Vehicles were purchased or leased.

271. Hyundai is and was at all relevant times a "merchant" and "seller" within the meaning of N.Y. U.C.C. §§ 2-104(1) and 2-103(1)(d) and N.Y. U.C.C. § 2-A-103(1)(t) and (3).

272. With respect to leases, Defendants are and were at all relevant times "lessors" within the meaning of N.Y. U.C.C. § 2-A-103(1)(p).

273. The Class Vehicles are and were at all relevant times "goods" within the meaning of N.Y. U.C.C. §§ 2-105(1) and 2-A-103(1)(h).

274. In connection with the purchase or lease of each of the Class Vehicles, Hyundai provides warranty coverage for the Class Vehicles under one or more manufacturer's warranties. Under these warranties, Hyundai promised to repair or replace defective systems and their components free of charge if they failed due to defects in materials or workmanship.

275. These affirmations of fact, promises, and undertakings constitute express warranties within the meaning of N.Y. U.C.C. §§ 2-313 and 2-A-210 and became part of the basis of the bargain between Hyundai and Plaintiff and the other New York Class Members.

276. Hyundai breached the express warranties because the Class Vehicles were sold and leased with defective DDMS in-cabin cameras that cause constant and distracting alarms and alerts, sudden braking, and loss of use of systems. Despite its warranties, Hyundai has refused and/or failed to repair the Defect or provide an effective remedy.

277. By failing to disclose the Defect and refusing to provide an effective repair, Hyundai deprived Plaintiff and the New York Class Members of the benefit of their bargain and breached the express warranties promising to correct defects in materials or workmanship.

278. Plaintiff and the New York Class Members performed all conditions precedent under the contract between the parties.

279. As described above, Hyundai was provided pre-suit notice of the

Defect, and as such have been afforded a reasonable opportunity to cure their breach of written warranties. Any additional time to do so would be unnecessary and futile because Hyundai has known of and concealed the Defect and, on information and belief, has refused to repair or replace necessary components despite the Defect's existence at the time of sale or lease of the Class Vehicles.

280. Alternatively, Plaintiff and New York Class Members were excused from providing Hyundai with notice and an opportunity to cure the breach of warranty because it would have been futile. Hyundai still has not provided an adequate remedy to address the Defect.

281. Hyundai is in privity with Plaintiff and members of the New York Class. Plaintiff and New York Class Members, not the dealers, were the intended beneficiaries of the Class Vehicles and the associated written warranties. Hyundai designed and manufactured the Class Vehicles, and created the advertising, marketing, and representations at issue and warranted the Class Vehicles to Plaintiff and members of the New York Class, either directly or through authorized agents. Purchase or lease through authorized dealers is sufficient to create privity because such authorized sellers act as Hyundai's agents for the purpose of the sale and lease of the Class Vehicles.

282. Hyundai's breach was willful and knowing. Hyundai knew that the Defect existed at the time of sale and that their purported repairs were ineffective but nevertheless continued to sell and lease Class Vehicles while representing them as defect-free.

283. As a direct and proximate result of Hyundai's breach of express warranties, Plaintiff and the other New York Class Members have suffered damages, including the diminished value of their vehicles, out-of-pocket repair costs, and loss of use.

284. Because of Hyundai's breach of express warranty as set forth herein, Plaintiff and the other members of the New York Class assert, as additional and/or

alternative remedies pursuant to N.Y. U.C.C. §§ 2-608 and 2-A-517, revocation of acceptance and restitution of all purchase or lease payments, together with incidental and consequential damages as permitted by law.

**COUNT XII**

**Breach of Implied Warranty of Merchantability**

**(N.Y. U.C.C. §§ 2-314 and 2-A-212)**

**(Plaintiff Weisbrot Individually and on behalf of the New York Class)**

285. Plaintiff Weisbrot ("Plaintiff" for purposes of the New York Class) incorporates by reference each allegation as if fully set forth herein.

286. Plaintiff and the other New York Class Members purchased or leased the Class Vehicles from Hyundai by and through its authorized agents for retail sales or were otherwise expected to be the eventual purchasers of the Class Vehicles when bought from a third party. At all relevant times, Hyundai was the manufacturer, distributor, warrantor, and/or seller of Class Vehicles. Hyundai knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

287. Hyundai is and was at all relevant times a "merchant" and "seller" within the meaning of N.Y. U.C.C. §§ 2-104(1) and 2-103(1)(d) and N.Y. U.C.C. § 2-A-103(1)(t) and (3).

288. With respect to leases, Defendants are and were at all relevant times "lessors" within the meaning of N.Y. U.C.C. § 2-A-103(1)(p).

289. The Class Vehicles are and were at all relevant times "goods" within the meaning of N.Y. U.C.C. §§ 2-105(1) and 2-A-103(1)(h).

290. Under N.Y. U.C.C. §§ 2-314 and 2-A-212, every sale of consumer goods carries with it an implied warranty that the goods are merchantable and fit for the ordinary purposes for which such goods are used, including safe and reliable transportation.

291. Hyundai impliedly warranted that the Class Vehicles were of

merchantable quality and fit for the ordinary purposes for which vehicles are used, would pass without objection in the trade, and would conform to the promises or affirmations made on their labels, marketing and warranties.

292. The Class Vehicles, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars are used.

293. In fact, the Class Vehicles were sold and leased with defective DDMS in-cabin cameras that cause constant and distracting alarms and warnings while the vehicle is in operation, making the vehicle unsafe. Because of this Defect, the Class Vehicles were not of merchantable quality, were unfit for their ordinary purpose, and failed to conform to the promises and affirmations made by Defendants.

294. Hyundai knew or had reason to know that Plaintiff and New York Class Members would use, consume, or be affected by the Class Vehicles.

295. Because of the Defect, the Class Vehicles were not in merchantable condition when sold and are not fit for the ordinary purpose of providing safe and reliable transportation.

296. The Defect substantially impairs the use, value, and safety of the Class Vehicles. As such, the vehicles would not pass without objection in the trade and would not be accepted by a reasonable consumer if the Defect were disclosed.

297. At the time of sale or lease, Hyundai knew or should have known that the Class Vehicles were defective and not in merchantable condition, yet they failed to disclose the defect and refused to provide a permanent or adequate repair.

298. Plaintiff and the New York Class Members performed all conditions precedent under the contract between the parties.

299. Hyundai is in privity with Plaintiff and the New York Class Members because Hyundai and its authorized dealers were part of a single distributive chain, and the retail transactions were made pursuant to Hyundai's express and implied warranties. Plaintiff and the New York Class Members were the intended

beneficiaries of those transactions and of the implied warranties arising therefrom.

300. As described above, Hyundai was provided pre-suit notice of the Defect, and as such has been afforded a reasonable opportunity to cure its breach of written warranties. Any additional time to do so would be unnecessary and futile because Hyundai has known of and concealed the Defect and, on information and belief, has refused to repair or replace the necessary components free of charge despite the Defect's existence at the time of sale or lease of the Class Vehicles.

301. Hyundai's breach of implied warranty affected all Class Vehicles uniformly and constitutes a continuing course of conduct.

302. As a direct and proximate result of Hyundai's breach of implied warranty, Plaintiff and the New York Class Members have suffered damages, including the difference in value between the Class Vehicles as delivered and as warranted, incidental and consequential damages, and diminution in resale value.

## COUNT XIII

### Unjust Enrichment

### (Plaintiff Weisbrot Individually and on behalf of the New York Class)

303. Plaintiff Weisbrot ("Plaintiff" for purposes of the New York Class) incorporates by reference each allegation as though fully set forth herein.

304. Plaintiff and the other members of the New York Class conferred a benefit on Hyundai by leasing or purchasing the Class Vehicles. Hyundai was and should have been reasonably expected to provide Class Vehicles free from the Defect.

305. Plaintiffs and New York Class Members unknowingly conferred a benefit on Hyundai of which Hyundai had knowledge, since Hyundai was aware of but failed to disclose the Defect and misled Plaintiffs and New York Class Members regarding the nature and quality of the subject Class Vehicles while profiting from this deception.

306. Hyundai unjustly profited from the lease and sale of the Class

Vehicles at inflated prices as a result of their false representations, omissions, and concealment of the Defect in the Class Vehicles.

307. As a proximate result of Hyundai's false representations, omissions, and concealment of the Defect in the Class Vehicles, and as a result of Hyundai's ill-gotten gains, benefits and profits, Hyundai has been unjustly enriched at the expense of Plaintiff and the other New York Class Members. It would be inequitable for Hyundai to retain their ill-gotten profits without paying the value thereof to Plaintiff and the other New York Class Members.

308. There is a direct relationship between Hyundai on the one hand, Plaintiff and the other New York Class Members on the other, sufficient to support a claim for unjust enrichment. Hyundai failed to disclose the Defect to improve retail sales, which in turn improved wholesale sales. Conversely, Hyundai knew that disclosure of the Defect would suppress retail and wholesale sales of the Class Vehicles, suppress leasing of the Class Vehicles, and would negatively impact the reputation of Hyundai's brand among Plaintiff and the other New York Class Members. Hyundai also knew its concealment and suppression of the Defect would discourage Plaintiffs and the other New York Class Members from seeking replacement or repair concerning the Defect, thereby increasing profits and/or avoiding the cost of such replacement or repairs.

309. Plaintiff and the other New York Class Members are entitled to restitution of the amount of Hyundai's ill-gotten gains, benefits and profits, including interest, resulting from their unlawful, unjust and inequitable conduct.

310. Plaintiff and the other New York Class Members seek an order requiring Hyundai to disgorge their gains and profits to Plaintiff and the other New York Class Members, together with interest, in a manner to be determined by the Court.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the other Class

Members, respectfully request that the Court enter judgment in their favor and against Hyundai as follows:

A. An order certifying the proposed Classes and designating the named Plaintiffs as the named representatives of the Classes and designating the undersigned as Class Counsel for the Class;

B. A declaration that the DDMS in the Class Vehicles is defective;

C. A declaration that Hyundai is financially responsible for notifying all Class Members about the defective nature of the Class Vehicles;

D. An order enjoining Hyundai to desist from further deceptive distribution, sales, and lease practices with respect to the Class Vehicles and directing Hyundai to permanently, expeditiously, and completely repair the Class Vehicles;

E. An award to Plaintiffs and Class Members of restitution and damages, including interest and overpayment and diminution in value damages, in an amount to be proven at trial, as well as other damages available at law;

F. An award to Plaintiffs and Class Members for the return of the purchase or lease price of the Class Vehicles, with interest from the time it was paid, the reimbursement of the reasonable expenses occasioned by the sale or lease, and damages;

G. A Hyundai-funded program, using transparent, consistent, and reasonable protocols, under which out-of-pocket expenses and damages claims associated with the Defect in Plaintiffs' and Class Members' Class Vehicles, can be made and paid, such that Hyundai, not the Class Members, absorb the losses and expenses fairly traceable to the recall of the vehicles and correction of the defect;

H. A declaration that Hyundai must disgorge, for the benefit of Plaintiffs and Class Members, all or part of the ill-gotten profits they received from the sale or lease of the Class Vehicles, or make full restitution to Plaintiffs and Class

Members;

I. An award of attorneys' fees and costs, as allowed by law;

J. An award of pre-judgment and post-judgment interest, as provided by law;

K. Leave to amend this Complaint to conform to the evidence produced at trial; and

L. Such other relief as may be appropriate under the circumstances.

**JURY DEMAND**

Plaintiffs hereby demand a trial by jury on all claims so triable.

Respectfully submitted,

Dated: September 16, 2026

SINGLETON SCHREIBER, LLP
PAULA R. BROWN (SB# 254142)

By: Paula Brown
PAULA R. BROWN

591 Camino de la Reina, Ste. 1025
San Diego, CA 92108
Telephone: (619) 342-4045
Facsimile: (619) 255-1515
pbrown@singletonschreiber.com

SINGLETON SCHREIBER, LLP
CHRISTOPHER R. RODRIGUEZ (SB# 212274)
ANDREW D. BLUTH (SB# 232387)
1414 K Street, Suite 300
Sacramento, California 95814
Telephone: (916) 248-8478
Facsimile: (619) 255-1515
crodriguez@singletonschreiber.com
abluth@singletonschreiber.com

***Counsel for Plaintiffs***